J. H. MAYNE et al., Appellants, v. BOARD OF SUPERVISORS OF POTTAWATTAMIE COUNTY, Appellee.

No. 41060.

FEBRUARY 9, 1932.

REHEARING DENIED OCTOBER 28, 1932.

222

J. J. Hess and George H. Mayne, attorneys for appellants.

John P. Organ, attorney for appellee.

Evans, J.—Drainage District No. 2 in Pottawattamie County was established in 1903 and the improvement completed in 1907. The area of the district comprised the certain bottom lands lying upon the banks of the Missouri River and between such river and the so-called "hill country," which rises abruptly from the lower lands, four or five miles distant from the river. Through this "hill country" flowed Pigeon Creek toward the Missouri River. Its watershed was highly elevated as compared with the lowlands upon the river. This elevation extended as high as a hundred feet. The fall of Pigeon Creek was as high as eight feet to the mile as it flowed through the elevated country. The course of this creek followed an indefinite course across the lowlands to the Missouri River. More detailed description may be found in Mayne v. Board of Supervisors, 208 Iowa 987. District No. 2 was organized largely for the purpose of controlling the water of this stream. In the original improvement the outlet was not fixed at the Missouri River, but was fixed in a pond some distance therefrom. This outlet was not upon the course of Pigeon Creek, but some distance therefrom. The ditch was not laid upon the course of Pigeon Creek to any extent except that it tapped the creek at its upper end. Taking the waters of the creek at the tapping point, it conducted them by a new route across the lower ground. In 1910, District No. 8 was organized. This district included the upper valley of Pigeon Creek. It lay to the north and east of District No. 2. It extended southerly along this creek to the tapping point of District No. 2. This district comprises the "hill country." Its improvement consisted wholly in straightening the sinuosities of the creek and thereby discharging the flow more rapidly upon the lower ground in times of high water. The low point in this district was at its junction with District No. 2 and at its tapping point. This junction point was ten feet higher than the outlet of District No. 2. It is manifest upon this record that the old course of Pigeon Creek across the bottom lands would meet

all the necessities of outlet for District No. 8. The original southwesterly boundary of District No. 2 was the Missouri River. In 1920 Subdistrict No. 3 in District No. 2 was organized. This was a levee district. Its purpose was to protect a certain area of District No. 2 against the overflow of the Missouri River in times of high water. A levee was constructed which extended for a considerable distance along the Missouri River and on both sides of the Pigeon Creek ditch.

Pursuant to previous contracts let therefor, certain improvements in the vicinity of the outlet of Pigeon Creek were made in 1924 and 1925 at a cost of more than $40,000. Proceedings were had before the Board of Supervisors whereby the landowners in District No. 2 sought to have a portion of this expense charged to District No. 8. Their application to that end was denied by the Board of Supervisors; and on appeal to the district court, was denied there. On appeal to this court a reversal was had and a distribution ordered. The pertinency of this reference will later appear.

In 1927 further expenditures were incurred by District No. 2 in the vicinity of the outlet and wholly within the area of Subdistrict No. 3. The plaintiffs-landowners in District No. 2 seek in this proceeding to apportion a part of the costs incurred in 1927 and to have a part thereof charged to District No. 8. At this point the case divides itself into two branches, which we will consider separately.

I. Up to this point we have treated the proceeding in the district court as an appeal from an order of the Board of Supervisors. It was not such in fact. The petition averred that the question of the liability of District No. 8 was adjudicated by our decision in the case of Mayne v. Board of Supervisors, 208 Iowa 987. It prayed that the adjudication be enforced and that the Board of Supervisors be ordered to conform thereto. The cited case of Mayne v. Board of Supervisors originated in the district court as an appeal from the order of the Board of Supervisors made in the year 1925, and pertaining to expenses incurred in 1924 and 1925. The expense involved in the present proceeding was incurred in purported improvement in the year 1927. Such expense could not therefore have been under consideration in the cited case. True, the cited case might have been deemed a controlling precedent in this case were it not for the fact that that statute which controlled the decision in the cited case was later repealed and another statute enacted in

lieu thereof. The present proceeding is controlled by the later statute. The former case was controlled by Section 1989-a24, Code Supplement, 1913, and Chapter 332, 38 G. A.; whereas the present case is controlled by Section 7563 et seq. of the present Code. The appellant so concedes. The opening statement of his brief is:

"The determination of this case turns wholly upon the construction to be placed upon the last clause of Section 7563 of the Code, which reads as follows:"

It follows that the former case was neither an adjudication of, nor a precedent for, the decision of the present case. If we should confine ourselves strictly to the plaintiffs' pleading, the case would necessarily end here. But the parties have voluntarily litigated their real controversy, and we will conform ourselves to this mutual attitude of the litigants, and pass upon the questions discussed by them.

II. · Under the previous statute, Section 1989-a24, the distribution of costs was to be made in proportion to the volume of water cast upon the outlet by the respective districts. It was upon this basis that the commission made its report to the Board of Supervisors in obedience to the order of this court in the former case (Mayne v. Board of Supervisors, 208 Iowa 987). The present statute, Section 7563, provides as follows:

"7563. *Improvement of common outlet.* When two or more drainage districts outlet into the same ditch, drain, or natural watercourse and the board determines that it is necessary to clean out, deepen, enlarge, extend, or straighten said ditch, drain, or natural watercourse in order to expeditiously carry off the combined waters of such districts, the board may proceed as provided in the two preceding sections. Each district shall be assessed for the cost of such work in proportion to the benefits derived."

This section is predicated upon the procedure provided in Sections 7561 and 7562. No proceedings were had under such sections as relating to the improvement of 1927. Preliminary to such improvement, no right was asserted as against District No..8. The improvement was constructed without notice to, or consultation with, District No. 8 or with its landowners. The method adopted for bringing this item to the attention of the commissioners is not disclosed in appellants' abstract, but is disclosed inferentially only in the briefs. After the reversal of the former case in this court, and

the remand thereof to the district court, the Board of Supervisors proceeded to perform the mandate of our reversing order and appointed the commissioners accordingly. The commissioners considered all the reported cost involved in that action and apportioned the same and reported accordingly. That report was approved by the Board of Supervisors and no complaint is made thereof by the appellants. In such report, however, it was made to appear that the appellants were claiming an additional sum of $4,389.41 for improvements made in 1927. Without questioning the regularity of the procedure or its own jurisdiction, it (the commission) reported fully on such item to the effect that no benefit accrued from that improvement to District No. 8. The Board of Supervisors approved the report *in toto* and the district court confirmed the same on appeal. It appears without dispute that the improvements under consideration consisted of an enlargement of the levees previously made pursuant to the organization of Subdistrict No. 3. Subdistrict No. 3 purported to be organized solely for the purpose of defense against the overflow of the Missouri River. Since the construction of the original levees in 1920 large accretions had attached to these lands of District No. 2, which bordered on the river. The levee work done in 1927 was not only confined to Subdistrict No. 2, but it was made for the most part upon the accretion lands. In the former case, 208 Iowa 987, we sustained the contention of appellants that the accretion lands were no part of District No. 2, and were not even liable to assessment for benefits. Why, then, should that improvement command an assessment for benefits from the district proper? On the issue of benefits, the plaintiffs offered no evidence. In that sense the testimony on the part of the defendants that no possible benefit could accrue therefrom, to District No. 8, was undisputed. The plaintiffs' contention at this point is that, under Sections 7474 and 7523, benefits were presumed. These sections have no application to the case. They relate to the organization of districts and to the presumptions that follow such organization as applied to the lands therein. There is no such statutory presumption as to lands lying in other districts. The question whether improvement made in one district results in benefit to another is, under the statute, a question of fact to be determined by appropriate evidence. It follows that the appellants have wholly failed to show that any benefits accrued to District No. 8 by virtue of the improvement in question; and have likewise failed to adopt any procedure which would en-

title them to an apportionment under the provisions of Section 7563. The judgment of the district court is accordingly—Affirmed.

All justices except Justice Grimm concur.