ADA WRY, Appellant, v. MODERN WOODMEN of America, Appellee.

No. 43525.

FEBRUARY 9, 1937.

REHEARING DENIED MAY 17, 1937.

A. J. Myers and F. G. Ryan, for appellant.

Hallagan, Fountain, Stewart & Cless, for appellee.

PARSONS, J.—The plaintiff herein, appellant, is the widow of Charles Edward Wry, who became a member of the defendant Modern Woodmen of America, a fraternal beneficial society, and this society issued to decedent a certificate of insurance for three thousand dollars on December 7, 1906, in which the plaintiff was beneficiary. This amount was, by the terms of the certificate, payable to plaintiff on the death of the insured. The death of Mr. Wry took place the 19th day of July, 1934, so he was a member of the defendant society for twenty-seven years and eight months. The defendant in the answer to plaintiff's petition to recover on the certificate admitted the membership, but alleged as an affirmative defense that at the time of his death the insured was in arrears for the benefit fund of $5.85 and 35 cents for local camp dues, a total of $6.20, which he failed to pay on or before June 1, 1934, by reason of which he became suspended from membership, and the certificate became null and void according to its by-laws. Defendant pleaded further that section 142 of defendant's by-laws in force at the time of the death of the said Charles Edward Wry, to wit: July 19, 1934, was as follows:

"The National Secretary shall, as soon as he has knowledge that any Beneficial member has become suspended by failing to pay Benefit payments, fines, or dues, give notice thereof upon form prescribed by the Executive Council. Such notice shall be given of his depositing the same in the postoffice nearest the National Secretary's office, in a sealed envelope, postage prepaid thereon, addressed to such suspended member at the last post-office address furnished by such member or the Camp Secretary, and shall by such notice inform such member of suspension and of the requirements necessary for reinstatement. The giving of or failure to give such a notice shall not have the effect of waiving the suspension, or of making this Society liable to such suspended member, or to any beneficiary or beneficiaries. The National Secretary shall, also, mail notices of suspension to Social members reported to him by local Secretaries as in suspension, or on whose account the local Camp may fail to remit Head Camp Per Capita."

That pursuant to such by-laws, J. G. Ray, the National Secretary of defendant, caused to be mailed to the said Charles Edward Wry at his last known address, according to defendant's records, a notice of suspension on each of three occasions occurring after January 1, 1933, to wit: In November, 1933, by reason of suspension occurring November 1, 1933; in January, 1934, by reason of suspension occurring January 1, 1934; and in July, 1934, by reason of suspension occurring July 1, 1934.

The plaintiff pleaded in her reply an admission that the assessment for June was unpaid on the 19th of July, 1934, the date of the death of the deceased, and that she tendered payment of the same in court; denied that the benefit certificate sued on was null and void in accordance with its terms; and denied that the deceased continued to be in suspension until the time of his death. The plaintiff further pleaded in the reply that it was the general custom of the society to receive assessments and dues after the month in which they became due, and deceased relied on this custom and course of business and was led to assume and believe that no forfeiture would occur from his failure to pay promptly and within the time specified in the contract between the said Charles Edward Wry and the defendant society; that the deceased had been delinquent in payment of his assessments and dues frequently before this time and the defendant had con-

sistently accepted payments from him at a later date than that required by the contract; that the defendant had adopted and established a course of conduct and business with the said Charles Edward Wry, by which he was permitted to pay his monthly assessments and dues to the defendant within a reasonable time after the end of the month in which the same became due and he was still treated and considered by the defendant as a member in good standing of the defendant society, and his said certificate was in full force and effect. She further pleaded that the decedent assumed and believed that the defendant society would not require strict and literal compliance with the said contract in that the defendant in accepting and receipting for said dues and assessments after the month in which the same became due, waived a strict compliance with the said contract, and the defendant is now estopped from asserting that the certificate sued on became and was null and void according to its terms, and that by reason thereof the defendant is further estopped from claiming that the said Charles Edward Wry became suspended from membership in the defendant society on July 1, 1934, because he failed to pay the assessment and dues in June, 1934, for the month of June, 1934, as required by the contract.

Plaintiff further pleaded in her reply that the said decedent died before a reasonable time had elapsed after the end of June, 1934, and by reason of the foregoing, at the time of his death he had in all matters complied with the requirements of the defendant society essential and necessary to the validity of the said benefit certificate and contract of insurance, and that at the time of his death he was a member in good standing of the defendant society, and said benefit certificate was in all respects in full force and effect.

At the trial of the case a stipulation was entered into, in which it was provided that the defendant issued the benefit certificate, Exhibit C, to Charles Edward Wry, pursuant to his application; that the said written contract between the member Wry and defendant society consisted of the articles of association and by-laws of the defendant, Wry's application and the benefit certificate; that Wry died July 19, 1934; that the assessments for June and July, 1934, in the amount of $5.85 plus 35 cents for local camp dues, for each month, were regularly levied by the defendant and were not paid by Wry nor anyone for him

but tender thereof was made in plaintiff's pleadings; and that in due time proof of Wry's death was filed by plaintiff.

The plaintiff on her part testified that she was the widow of Charles Edward Wry; that Exhibit C was benefit certificate which was issued to Mr. Wry; that she found it among the decedent's effects after his death.

The defendant society has a lodge form of government. Its lodges are called Camps. Each member must belong to some camp. The local dues are paid to the camp, and must be paid cn or before the first of the month; and it is further provided that wherever the word "month" appears, the same shall be taken to mean calendar month.

It is further provided in section 44 of the by-laws that there can be no waiver of any by-law by any officer of the society, or any local camp, whether the same be now in force, or hereafter enacted.

Section 60 of the articles of association, or by-laws, provides as follows:

"Every beneficial member who shall fail to pay any regular or special Benefit payment on or before the last day of the month within which same is payable, or who shall fail to pay regular or special local Camp dues therewith, including Per Capita, or who shall fail to pay with the Benefit payment or Benefit payments next thereafter payable, any fine imposed, shall thereupon, *ipso facto,* become suspended, and during such suspension all Benefit certificates and riders of such member for which such payments are not made, shall be absolutely null and void. *Provided,* that nothing herein contained shall prevent the National Secretary from notifying said suspended member as to the manner and time in which said member may reinstate; *provided further,* that mailing of the official paper to a member under suspension shall not be a waiver of the suspension. *Provided, however,* that nothing in this section shall annul the nonforfeiture provisions of any Benefit certificate."

Section 62 provides as follows:

"After a member has become suspended, if owing both dues and Benefit payments, the Camp Secretary must not accept either dues or Benefit payments alone, but both must be tendered together, and such suspended member cannot be reinstated until

all arrearages are paid, and the laws of this Society in all respects are complied with; *provided,* that if a member has been suspended for a period of more than three months and less than six months, the suspended member may be reinstated by complying with the provisions contained in Section 66 hereof."

Section 64 provides for the reinstatement of suspended members.

Section 65 provides as follows:

"The retention by the Society of any Benefit payment or dues paid either before or after the death of any member for reinstatement, or of any Benefit payment or dues paid subsequently thereto, shall not constitute a waiver of any of the provisions of these By-laws, but the Society shall return such Benefit payments and dues to the member, if living, and if dead, to the beneficiary or beneficiaries, upon their written demand therefor."

Section 66 provides for reinstatement after suspension for more than three months, and less than six months for the non-payment of benefit dues, etc. And section 67 provided for no reinstatement after six months; that the right to reinstatement is then forfeited.

Section 271 provides that a local camp failing to make payment of any benefit payment or per capita on or before the fifteenth day of the month following the month in which the same was payable by the members, or fail to pay any special payment required, in accordance with the by-laws, such members shall be suspended, and notice of such suspension shall be mailed to the national secretary, to the consul, secretary, and banker of such camp. The local camps fix their own dues.

Under the admissions of evidence in this case there is no question but what the dues and assessments due for June, 1934, were not paid before the first of July, as required, and never have been paid; and that the insured then stood suspended and entitled to no benefits under the strict interpretation of by-laws and articles of the association (defendant), and under the admissions in the pleading of the plaintiff in her reply, in which she says that her husband, Charles Edward Wry died on the 19th day of July, 1934, leaving the June 1934 dues and assessment unpaid, but payment of which was tendered. Hence, it appears

that the only theory upon which plaintiff must recover, if at all, is on the conduct of the defendant society in accepting assessments and dues after the same were due and were delinquent, upon the theory of the case of Conkling v. Knights & Ladies, 183 Iowa 665, 166 N. W. 384. The writer of this opinion is fairly familiar with the Conkling case, having tried it in both courts above and below. There is a distinction between this case and the Conkling case, that is determinative of this case. In the Conkling case the practice of taking assessments overdue was persisted in for years, as in this case, as shown in the record, but in this case there was a notice to the insured prior to July 1, 1934, which notified him that such practice would be no longer continued, and called his special attention to the by-laws and rules of the defendant, and the necessity of strict observance thereof in the payment of dues and assessments. So that whatever the insured may have relied upon in this respect, that it would no longer be continued, that a strict adherence to the by-laws and rules was necessary, as the defendant would thereafter insist on full compliance with the rules. Such a rule is reasonable for the reason that the defendant is not like an ordinary life insurance company, having large reserves to draw on, and its contracts or policies have no surrender value that a delinquent payment can be charged against. The effect of so doing in old line companies is to make the amount of the liabilities of the company outstanding so much less, i. e., the amount charged against the policy. Thus, what might be a reasonable regulation in one class of insurance might not be reasonable for the other.

At the close of the testimony for the plaintiff the defendant made a motion for a directed verdict, basing its motion upon the propositions: (1) that the evidence affirmatively shows, undisputed, that Charles Edward Wry died on the 19th day of July, 1934, without having paid or tendered the regular assessments for the months of June and July, 1934, as provided by the certificate, application and by-laws of the defendant society; (2) that the undisputed evidence is that the assessments for the months of June and July 1934 were duly and regularly levied as provided by the by-laws, articles, certificate of the defendant society; (3) that the defendant did all things that were legally necessary for it to do and perform under the law, certificate and application and by-laws; (4) that under the evidence in this record the certificate of insurance issued was lapsed and of no

force and effect from and after June 30, 1934; followed by several other reasons, among them that Wry failed to comply with the terms and conditions of the certificate, etc.; that the certificate was not in force and effect on the date of the death of Charles Edward Wry; that the evidence had failed to prove that it was in effect, and that there was no evidence in the record to show that Charles Edward Wry relied upon the custom, if any; that no tender of the June and July assessments was made in accordance with the certificate and by-laws; that there is no evidence in the record that the company waived at any time the payments of the assessments for the months of June and July; and that the plaintiff had wholly failed to substantiate the allegations in her reply to the effect that the deceased relied upon the customs and course of business in failing to make the payments of assessments for the months of June and July, 1934; and that the record is entirely silent upon any knowledge or reliance upon the part of Charles Edward Wry.

Judge Halloran, who presided over the lower court, overruled the motion at that time discussing the Conkling case and the case of Rice v. Grand Lodge, A. O. U. W., 92 Iowa 417, 60 N. W. 726, and held that there was a hopeless conflict in the opinions of these two cases.

Testimony was then put in by the defendant, which showed without dispute the sending of notices to the insured on December 1, 1933, January 1, 1934, and on the day the insured died, July 19, 1934, by which he was warned that he must make the payments at the time required, and his attention was called to the by-laws and rules of the society. Upon all parties resting, the defendant made a motion for directed verdict, which motion was sustained and the jury instructed to return a verdict for the defendant. Plaintiff excepted, and appeal was taken to this court.

Frances Phillips, an employee of the defendant, testified that she mailed to the insured, Wry, on January 31, 1934, a notice, addressed to Wry at 200 Fifth Avenue, New York City, and that Exhibit 5 was a true copy of such notice; that the same was enclosed in an envelope, postage prepaid, the envelope was sealed and contained the notice as aforesaid. The witness was asked, "Will you state whether or not this notice was deposited in the United States mails and when?" This was objected to as incompetent, irrelevant and immaterial, asking for an opinion and

calling for a conclusion of the witness, there being no evidence as to the deposit in a mailbox of the United States, for transmission, and no evidence that the witness knew the facts.

This objection was properly overruled. Witness was testifying as to her own knowledge of the transmission. Every essential for its admission was present; only a general objection was made, not calling attention to any special element to make the testimony objectionable. This testimony had been taken by deposition with the right to object at a time of trial, it is true. Even if the witness was present in court, the objection was not sufficiently specific as to any element that would make the testimony incompetent or immaterial, except that there was no evidence as to deposit in the mails, other than that the witness said she mailed the envelope for transmission through the mails, and besides, she says, "on January 31, 1934".

So the line of cases cited by appellant as to this are not applicable. They are: Forest v. Sovereign Camp W. O. W., 220 Iowa 478, 261 N. W. 802; Central Trust Co. v. City of Des Moines, 205 Iowa 742, 218 N. W. 580; Molloy v. Supreme Council, 93 Iowa 504, 61 N. W. 928; and other cases along that line.

The evidence showed that the address on the envelope was Wry's address. A notice (Exhibit 5) was placed inside the envelope, calling his attention to the rules and by-laws of the association as to the effect of failure to pay dues; as to the necessity of reinstatement for failure so to do, and that by these rules and by-laws he must stand suspended with no insurance until reinstated. If he ever thought a custom would protect him and his beneficiary from a failure to comply with the insurance contract, he would be warned by this notice, and would have knowledge that he was no longer to rely on the custom. There were no such facts in the Conkling case, relied on here.

It is claimed by the plaintiff that section 142 of defendant's articles of association was violated by the defendant. There is no basis for this claim. That rule merely requires the national secretary, as soon as he has knowledge of the failure of a member to pay dues, to notify the insured. There was no showing when the national secretary had such knowledge, but the dues and assessments were collected by the camp clerk, and he had time to send same to the home office, by section 271, before the 15th of the month following the month in which the same was payable. So the June payment being due June 30th, it would

very likely not reach the home office before July 16th. It is shown in the record here that on the 19th of July, 1934, the required notice was sent to Wry. But he was then dead. So it appears there was diligence in sending out the notice, for the last assessment, as there is no showing of time when the national secretary acquired knowledge of the delinquent payment. It very well may be that in an institution as large as this such things might not come to the knowledge of the secretary as the various clerks reported their payments, as it could not all be done in one day. But Wry had been fully warned before what would be the effect of failure to pay dues.

Wry, even without this notice being sent out, knew the provisions of the by-laws of the defendant. He knew he must pay his dues at the time provided. He knew if he didn't he stood suspended. He knew if suspended that the defendant had no right to take his dues. He knew that no one had the right to waive this provision. He knew, in fact, everything the by-laws contained, and is chargeable with notice of it, because it was a part of his contract. Hence, even without other notice of what was to happen to him, he knew it might happen at any time. These death benefits were paid from the assessments of members. It is not inequitable and not wrong for one to be compelled to live up to his contract. It isn't fair to the balance of the membership for one to have his beneficiary paid, because the balance pay in their assessments and dues upon reliance on the contract between the insured and insurer being carried out. That is of the essence of insurance in this form.

In addition to Exhibit 5 other notices were sent, of similar import and character, to the insured. Exhibit 4, under date of December 5, 1933, was one. This plainly called to the attention of Wry of the necessity for strict compliance with the by-laws in the payment of dues, and what happens to his insurance if he doesn't comply. The testimony shows that Exhibit 4 is a printed copy of such notice referred to as sent December 5, 1933. That was inserted in an envelope, sealed, postage prepaid, and addressed to Charles E. Wry, 200 Fifth Avenue, New York City.

It is also noticeable that in the testimony of Mrs. Wry, the beneficiary and widow of the insured, that she says she was the widow of Edward Wry; that Exhibit C was the benefit certificate she found among her husband's effects after his death; also that she found among his effects certain other exhibits. She nowhere

said she did not find the original of Exhibits 4 and 5 among his effects. They were sent to him, the same as the other exhibits were sent, all to his proper address. So we have in the record, without denial, the sending of notices to the insured that he must strictly comply with the by-laws in regard to what had to be done; the attempt here is to claim that notwithstanding these, there was a waiver, i. e., a reliance on a custom absolutely contrary to the provisions of the by-laws and notices sent out.

The lower court cited and discussed somewhat in ruling on the motion for directed verdict in the case of Rice v. Grand Lodge of A. O. U. W., 92 Iowa 417, 60 N. W. 726. That case goes farther and holds among other things that subsequent notice of subsequent assessments brought payments after they were delinquent, and after assured's death, and that all the money held by the said officer was then tendered and refused, and held no waiver of previous delinquencies. This was simply upon the very terms of the contract of insurance itself.

In Malone v. Grand Lodge, 186 Iowa 374, 377, 169 N. W. 438, 440, the court held, speaking through Judge Stevens, and commenting on Conkling v. Knights & Ladies, 183 Iowa 665, 166 N. W. 384, and O'Connor v. Knights & Ladies, 178 Iowa 383, 158 N. W. 761, L. R. A. 1917B, 897, that "While, upon the record before us, a jury might possibly have found that the payment made by the recorder at the request of plaintiff was, in fact, made after January 31st, plaintiff was notified that thereafter the member would be required to pay dues and assessments promptly. There was nothing in the transaction to mislead or to lull her or the member into the belief that the payment of future assessments might be deferred beyond the time fixed by the by-laws of the society."

In Whitlow v. Sovereign Camp, 199 Iowa 579, 202 N. W. 249, the court held, speaking through Judge Albert, that a provision in a life insurance policy to the definite effect that failure to pay promptly the dues and assessments at the time specified, shall work a complete forfeiture of the policy, is self-executing even though the reason for not making the payments is the insanity of the insured.

The plaintiff raises some question as to the failure of the national secretary to give notice. Under the by-law which provides that the giving of or failure to give such notice shall not have the effect of waiving the suspension, or of making the so-

·ciety liable to such suspended member, or to any beneficiary or beneficiaries, this question is answered.

We have further the provision found in by-law 60 providing that upon the failure to pay the dues and assessments when due, the member shall become *ipso facto* suspended, and during such suspension all benefit certificates and riders of such member for which such payments are not made, shall be absolutely null and void.

Section 62 contains the provisions, "and such suspended member cannot be reinstated until all arrearages are paid, and the laws of this society in all respects are complied with." Then follows the provision of section 65 that the retention by the society of any benefit payment or dues paid either before or after the death of any member for reinstatement, or any benefit payment or dues paid subsequently thereto, shall not constitute a waiver of any of the provisions of the by-laws, and that all such benefit payments shall be returned to the member if living, or to the beneficiary.

In the Conkling case is set out a list of the payments made after they were due. These were twenty-eight in number. Many of the payments were double payments, that is, for two months at a time. These were accepted right along by the society. The last payment was made on the 6th of August, 1914. That payment was for July and August. They were entered on the records of the society. On the 7th day of August, 1914, receipt was issued, and afterward the society first learned of the death of the insured. That is to say, he died on the day after the receipt was issued by the society. On the discovery of this death the society sent the money back to the parties remitting it, and it was tendered back to the society by these parties. This payment had never been remitted to the national council; all other payments made by the insured were remitted to the national council on the 5th and 12th of the month. At no time when these payments were made had the society any knowledge of the then physical condition of Conkling, nor did the record disclose that any inquiry was made touching Conkling's then physical condition. There is in the Conkling case no record of any kind whatever, showing the calling of insured's attention to the effect of suspension, i. e., giving him notice after the society received the money, that he was suspended, and what the effect of suspension would be, i. e., that he was barred from all

benefits of the policy, and his beneficiary would receive no benefit.

It does appear in the opinion in the case of Conkling v. Knights & Ladies, it does appear in the record upon which the case was decided, that the dues in question in that case were paid prior to the death of Conkling. They were paid to the local secretary on the 6th of August, 1914, and the insured died sometime later, the next day. Learning that the insured had died, the defendant then refused to accept the payment, although it had continuously accepted payments during the life of the insured, after they were due, for a much longer period of time.

In the case under consideration, the record shows that the insured died with the payment not having been made.

This case differentiates, we think, seriously in the case under consideration, and these are the differentiations made by Judge Halloran in his ruling upon the motion for a directed verdict. Another thing to be observed, is that at the time of the death involved in the Conkling case, the assessments had been paid for June and July. Here they were unpaid and have remained unpaid.

True the plaintiff in this case tendered the payment into court, between $5 and $6. Who would not tender that amount to get $3,000? The collection of this small sum of the dues could not be enforced by law against the insured or his beneficiary. To hold otherwise than Judge Halloran held would be to lay down a rule we cannot sanction.

Judge Halloran, in his opinion delivered at the time of the ruling heretofore spoken of, said as to this case, "he did fail and neglect to·pay the said assessment due on or before June 30, 1934, and permitted his certificate of membership to lapse."

The assessment was due the 30th of June, 1934; Wry died on the 19th of July, 1934, hence he was at least nineteen days in arrears at the time he died. He had received notices in the past, at least two by letter, one shortly before his death, which notices were mailed in December 1933 and January 1934; and also a notice as to the October 1933 assessment, which notice, among other things, said, "I regret to notify you that the monthly report of your Camp Secretary covering beneficiary payment #10 (October) due and payable on or before the last day of October, does not include that payment to your credit. The Benefit certificate of a member who is thus delinquent in

his payments is not in force and the member is not entitled to any right or privileges of membership in Modern Woodmen of America until reinstated, unless otherwise provided in the Certificate. * * * We feel that you will be glad to have this reminder." The other notices sent Wry were in this form.

Then follows directions as to how he may reinstate, and in these directions is the following: "Within three months from November 1, 1933, if you are in sound health and not engaged in a prohibited occupation, you may reinstate without a medical examination by paying to your camp secretary thus:

"If you reinstate in November, Benefit payments Nos. 10 and 11; if you reinstate in December, Benefit payments Nos. 10, 11, and 12; if you reinstate in January, Benefit payments Nos. 10, 11, 12, and 1, including of course, your local Camp dues and any other arrearages due from you."

Then follows the provisions for what would happen to him if he delayed more than three months, that he would be subject to special and additional requirements. He is then told, "Life is uncertain and those who are wise and prudent prepare for the future and leave nothing to chance. You need the protection of Modern Woodmen of America, * * * which will welcome you back and furnish you safe and sound insurance at the lowest possible cost consistent with safety", and he is then told that if he has reinstated the notice may be disregarded, but if he has not already reinstated, "today is the time to take up this matter with the Secretary of your Camp."

The record here shows that Wry had repeated subsequent notices of this character; that he did not pay any attention to them; that he allowed his June payment to go unpaid. In other words, he lapsed, and thereby became suspended, and he died while suspended. His beneficiary was not entitled to any of the benefits of his policy; no money could be collected from the society for the death of Wry.

These things differentiate this strongly and essentially from the Conkling case. There were no such notices sent in the Conkling case, and that is the case that is relied on here to reverse the court below, and it isn't sufficient because it is not in point.

A reading of the record shows there had been sent to Wry, as had been to all members in arrears, notices as to what would happen if he was in arrears, that he would be suspended, and if in suspension when he died his beneficiary would receive no

benefits under the certificate. Whatever might be said as to any custom having grown up between the deceased and the society prior to the receipt of these notices, the society had the right to give him notice that such custom was abrogated, i. e., that it would be no longer followed, and that he would have to take the consequences, if he did not live up to the rules of the society. He disregarded the rules. How can it be said, after receiving these notices, that he relied on the custom any longer, even conceding he had the right to rely before? He was told in plain language he had to pay or what would happen. Yet he did not pay in the dues and assessments; he paid no attention to the warning; he died in suspension, and consequently without insurance. Therefore, under the record in this case the lower court did the only thing it could do, sustained the final motion for directed verdict, and for these reasons the case is hereby affirmed.—Affirmed.

RICHARDS, C. J., and HAMILTON, ANDERSON, DONEGAN, and STIGER, JJ., concur.

KINTZINGER, J., dissents.