A. J. COE, Appellant, v. BOARD OF SUPERVISORS OF HARRISON COUNTY et al., Appellees.

W. C. IDDINGS, Appellant, v. BOARD OF SUPERVISORS OF HARRISON COUNTY et al., Appellees (and two other cases).

Nos. 45008, 45009, 45010, 45011.

DECEMBER 10, 1940.

Michael Murray, for appellants.

DeVere Watson and William P. Welch, for appellees.

SAGER, J.—This controversy involves three drainage districts, all in Harrison county. Boyer district No. 1, hereafter referred to as district No. 1, is the lower or servient district. Next above is Latta drainage district to be referred to as Latta; and next above that, Upper Boyer district of which we shall speak as the Boyer. These districts were established a number of years ago and the cost of construction assessed to the property owners in proportion to the benefits received. No question as to the validity of these proceedings is before us.

Time and the elements operated against the original construction with such effect that some action was called for to restore its usefulness. In order to do this the Board of Supervisors, acting under powers granted by section 7563, 1939 Code, cleared out and otherwise improved the ditch in district No. 1. This was first done in the year 1930 under a contract. When completed the ditch was restored to its original capacity. Appellants' argument seems to view the work under contract in a somewhat different light than that done in later years by day labor, but with this we are not concerned.

As stated above, the districts involved were established according to law. These districts thus became subject to the provisions of law having to do with drainage districts in general. The Board is given jurisdiction to establish districts under section 7421, 1939 Code, and by section 7563, the power to clean out and otherwise improve the common outlet when "two or more

drainage districts outlet into the same ditch.'' We have such a situation here. No. 1 is the lower district and as such is designed to take care of the waters from Latta and Boyer. During the years 1931 to 1934 the ditch in No. 1 required considerable improvement. This was done by day labor as occasion demanded. The work was paid for in warrants against district No. 1, totaling, with interest, $27,598.07. On March 1, 1935, a number of property owners in the district petitioned the Board to spread this cost over all the land served by the several districts, the waters of which outlet through No. 1. On July 22, 1935, following an engineer's audit and report, a commission was appointed to apportion benefits. A time was set within which this commission should report. These proceedings were in accord with the requirements of sections 7564 and 7565, 1939 Code. Such a report and apportionment was duly made. Appellants do not deny the filing of this report but say that no assessment was legally levied against the Latta and Boyer districts. The trial court found no merit in this contention—nor do we.

The records of the Board in this connection disclose that the report of the commissioners was approved and confirmed and there was apportioned to each district its proper share of the work done in the years 1930 to 1935. It shows that pursuant to such apportionment, it was ordered that the Board ''take such steps and proceedings as are necessary to assess and levy upon * * * all property subject to assessment'' in No. 1, Latta, and Boyer districts. The record contains this further order:

''* * * that there be and is hereby levied and assessed upon each separate tract of land * * * within the district, that are described or named in the foregoing 'Assessment List', the specific sum of money which is set out in said list following the description of said land * * * for the use and benefit of Boyer Sub-drainage District No. 1 * * *. The county auditor is hereby directed to enter said assessments upon the tax lists and certify the same to the county treasurer for collection.''

This order was complied with by the county auditor. It should be stated that the apportionment of these costs and expenses was made upon the same basis as were the apportionments of the cost of the original constructions, the Board having

found that such apportionments furnished a fair and equitable basis and that no good reason appeared why a new and different one should be adopted.

Notwithstanding these proceedings, appellants insist that the trial court erred in ruling that the Board *determined* that the improvement was necessary. Their position seems to be that the Board never formally, nor as a Board, expressed its *determination*. In support of this, our attention is directed to section 7563, 1939 Code. Our attention is likewise called to Steel Co. v. Van Buren Co., 126 Iowa 606, 102 N. W. 536. That case is nothing like the one before us. There we dealt with a thieving contractor, a corrupt engineer, and a careless or inattentive board of supervisors, two members of which sought to approve a job in which gross fraud had been perpetrated. Here we have no such situation. More than that, the state of the record before us does not enable us to decide that there was in fact no official determination made. But if this were not so, it does not follow that the absence of such a record would be fatal.

In Rice & Son v. Plymouth County, 43 Iowa 136, 139, we said:

"We are not prepared to say that everything done by the board must be entered of record, or that before the county can be bound there must be some writing or equally unequivocal act done or signed by the members of the board and filed and preserved. But there should at least be an assent given by a majority of the members of the board while in session, before the act, thing or matter will be binding on the county."

Another complaint made by appellants seems to be that there was no separate record of the assessment made and placed in the files which the auditor kept for the different districts. It is apparently thought, that the fact that a clerk in the office put carbon copies in these different files after attorneys began investigating, thereby there was given to appellees some advantage. The course taken by the auditor in this regard was the usual one, but, through some oversight, apparently the filing of these copies was for a considerable time deferred. But we find no requirement in the statutes that such copies need to be

made or kept. The records of the drainage districts containing all the proceedings were on file and by their very terms made direct and specific reference to the different districts and an apportionment of the taxes thereto. It can scarcely be argued that the auditor was under necessity of having a separate book for each district or subdistrict in that territory.

Appellants' second complaint is that the assessments were not legally made against the upper district. What we have said disposes of this.

Appellants complain likewise that the court's finding that the work and labor done on the ditch in district No. 1 was to enlarge, widen, clean out, and deepen the channel, because, they say, it was not of that character. This is a fact question upon which the trial court is amply supported by the record.

It is argued that the interest on outstanding and unpaid warrants was computed by the engineer who made up the audit on the basis of 6 percent compounded yearly. This is said to be error because the statute, as it then was, permitted only simple interest at 6 percent. Section 7496, 1931 Code. This complaint seems to be well founded. The engineer himself admitted it, but for reasons presently to be stated the appellants can have no relief here.

It is also urged that at the time the assessment was made, the right on the part of the Board to make it had been barred by the statute. That period, it is said, was five years either from the time of the completion of the work, or from the time the warrants were issued. A number of citations are made to various propositions, which seem to call for no discussion here because not applicable; for instance, it is said that a right of action on drainage warrants accrues when they are issued; that the Board of Supervisors have no power to toll the statute nor to waive it; that a cause of action against a public officer is barred in three years, and one on an unwritten obligation in five years. It would seem to require no argument to prove that we are not confronted with any such questions. We are not cited to, nor have we been able to find, any statute which requires the spreading of an assessment year by year for the cost of keeping a drainage system in operation as was done here from the years 1930 to 1934.

Other propositions are urged but they will not have specific attention herein. All of appellants' arguments are met by the fact that these assessments, whether erroneously levied or not, were within the jurisdiction of the Board of Supervisors and the only remedy of the taxpayer then was, and now is, appeal. This doctrine was reaffirmed in Miller v. Monona County, 229 Iowa 165, 294 N. W. 308.

While the jurisdiction of a court of equity is very large, we have no power to substitute the processes incident to ordinary litigation for those the legislature has laid down for handling drainage matters. If injustice results from an insistence that these statutes be followed, redress lies only in that quarter. If it be admitted that the courts may regulate and direct the operation of drainage districts in one particular, they may take over in all.

Appellees' motion to strike and dismiss has been considered and overruled.

We think the decrees of the trial court in the four cases involved were right and they are affirmed.—Affirmed.

HALE, MILLER, MITCHELL, BLISS, and STIGER, JJ., concur.