BOARD OF SUPERVISORS OF HARRISON COUNTY et al., Appellees, v. BOARD OF SUPERVISORS OF CRAWFORD COUNTY et al., Appellants.

No. 46272.

DECEMBER 14, 1943.

124

Robert K. Brannon, of Denison, for appellants.

William P. Welch, of Logan, for appellees.

Bliss, J.— This action was tried and submitted to Judge Hutchison, who died before determining it. By agreement of the parties, Judge Snell then decided the case from the record and the transcript. Having been tried as an equitable action, as provided by section 12442, Code, 1939, it is triable de novo on appeal, upon all issues of law and fact, whether passed upon by the trial court or not. Austin & Spicer v. Carpenter, 2 (Greene) Iowa 131, 134, 135; Manning v. Ottumwa Auto Co., 210 Iowa 1182, 1187, 232 N. W. 501; Geil v. Babb, 214 Iowa 263, 267, 242 N. W. 34; Board of Supervisors v. Board of Trustees, 221 Iowa 337, 344, 264 N. W. 702.

The Boyer River is the outlet for the watershed of all of the drainage districts, both plaintiff and defendant. The stream has its source in Buena Vista county and flows in a southwesterly direction diagonally across Sac, Crawford, and Harrison counties into Pottawattamie county, where it empties into the Missouri River. Commencing at the mouth of the river and going upstream, the first drainage district is the Harrison-Pottawattamie District No. 1. The upper end of its main ditch is a short distance north of the south line of Harrison county. This district is not involved in this litigation, but the main ditch of the plaintiff district empties into the upper end of the main ditch of the first-mentioned district. The main ditch in Boyer Sub-Drainage District No. 1 is a little over six miles long and extends in a northeasterly direction. This district was established in 1908 and contains within it the Euclid

Sub-Drainage District, established in 1920. Just above the Boyer Sub-Drainage District No. 1, and outletting into its main ditch, is the Latta Drainage District, established in 1909, having a main ditch about three miles long and having three subdistrict laterals within and without its boundaries. Above the Latta district, and emptying into its main ditch, is the Upper Boyer Drainage District, established in 1910, with a main ditch about eighteen miles long and having ten subdistricts. All of the districts so far mentioned are in Harrison county. Just above the Upper Boyer Drainage District, and emptying into the upper end of its main, is Boyer Drainage District No. 1, Crawford County, one of the defendants. It was established in 1910, and has three subdistricts—Arion, Riddle Cook, and Boyer Township—defendants. The last district upstream is the defendant Paradise Township Drainage District, Crawford County, established in 1921.

Boyer River was a very sinuous stream, and in constructing these drainage improvements the course of the stream was straightened and its length was reduced substantially half through the Paradise, Boyer No. 1, Upper Boyer, Latta, and Boyer Sub No. 1, drainage districts. The main ditch in the plaintiff district has much less fall than the main ditch which traverses the upper districts. The straightening of the course of the stream greatly accelerated the flow of the water through it and added to the silt and debris which it carried, particularly during high-water periods, and caused much damage to the main ditch in the plaintiff district by filling it and by destroying its spoil banks and flooding the land in this district. It became necessary to remedy these conditions by removing the fill in the main ditch at and above the outlet in this district, to deepen and widen the ditch, rebuild the levees, and to make other repairs.

Section 7563, Code of 1939, provides:

"Improvement of common outlet. When two or more drainage districts outlet into the same ditch, drain, or natural watercourse and the board determines that it is necessary to clean out, deepen, enlarge, extend, or straighten said ditch, drain, or natural watercourse in order to expeditiously carry

off the combined waters of such districts, the board may proceed as provided in sections 7561 and 7562. Each district shall be assessed for the cost of such work in proportion to the benefits derived.''

Sections 7564, 7565, 7566, 7567, and 7568 provide generally for the appointment of commissioners to assess these benefits and to make report of their apportionment to the board of supervisors of the county in which the repairs have been made, - who shall pass upon the report and order the levy of the assessments. The statutory sections are quite general and do not specify many of the details of the procedure. There has been considerable litigation in matters of this kind among drainage districts in the Missouri River watershed, which have been appealed to this court. Under the statutes, as construed by our decisions, the trustees of any drainage district, or, if there be none, the board of supervisors of the county of the drainage district in which the improvement or repairs are to be made, have charge thereof, appoint the commissioners, pass upon their apportionment of the expense of the improvement, and, if the districts to be charged are under the control of the board, they levy the assessments. If some of the districts to be charged are not under their control, but are in other counties, they notify the proper board of the assessments apportioned to the respective districts under it and direct it to levy the assessments. See Board of Trustees v. Boards of Supervisors, 198 Iowa 117, 197 N. W. 82; Mayne v. Board of Supervisors, 208 Iowa 987, 223 N. W. 904, 225 N. W. 953; Board of Supervisors v. Board of Supervisors, 214 Iowa 655, 241 N. W. 14; Ward v. Board of Supervisors, 214 Iowa 1162, 241 N. W. 26; Mayne v. Board of Supervisors, 215 Iowa 221, 241 N. W. 29; Board of Supervisors v. Board of Trustees, supra, 221 Iowa 337, 264 N. W. 702; Coe v. Board of Supervisors (and three other cases), 229 Iowa 798, 295 N. W. 151; Board of Trustees v. Board of Supervisors, 232 Iowa 1098, 5 N. W. 2d 189.

It appears from the printed record and the certified transcript of the record below that the material facts are substantially as follows: The work of repair and reconstruction of the main ditch in Boyer Sub-Drainage District No. 1, plaintiff;

was begun in January 1930, and in payment of the work done
during the year 1930 said district issued fifty-two warrants,
during nine months of the year, commencing January 11th and
ending on September 12, 1930, in the aggregate amount of
$12,852.93; during the year 1931, for such expense, said district
issued its nineteen warrants, during a period of seven months,
commencing January 27, 1931, and ending October 12, 1931, for
a total amount of $1,587.11; during the year 1932, for such
expense, said district issued its twelve warrants for $402.50,
during a period of six months, commencing on June 7th, and
ending on December 3, 1932; during the year 1933 said district
issued two warrants on January 9th for such expense for
$436.75; and in the year 1934 said district, for this expense,
during a period of five months, issued twenty-two warrants,
commencing June 5, 1934, and ending November 14, 1934,
for $2,163.40; the aggregate amount of warrants thus issued
in the five years being $17,442.69; these warrants were all
drawn upon the funds of the plaintiff district, and, as they
were issued, they were stamped "unpaid for want of funds";
on March 1, 1935, a number of property owners in this dis-
trict petitioned the board of supervisors to spread the cost of
this expense over all the land served by the several districts
whose waters had their outlet into and through the main ditch
of the plaintiff district; on May 9, 1935, an engineer appointed
by the Harrison County Board of Supervisors made an audit
of the finances of the plaintiff district and reported unpaid
warrants at that time in the sum of $27,598.07, of which sum
$17,442.69 of said warrants were issued for widening, enlarging,
and maintaining the main ditch of the plaintiff district; this sum,
with interest computed at six per cent as of August 1, 1935,
made the total amount of warrants ($17,442.69) and interest
($5,323.32) the sum of $22,766.01; on July 22, 1935, the board
appointed a commission to apportion this sum among the
districts and subdistricts served by the main ditch and outlet
of the plaintiff district: the commission reported on September
5, 1935, and apportioned said sum of $22,766.01 among the
benefited districts, as follows: Boyer Sub-Drainage District
No. 1, with its subdistrict, $7,503.68; Latta Drainage District,

with its three subdistricts, $1,520.77; Upper Boyer Drainage District, with its ten subdistricts, $9,691.49; the defendant districts, Boyer Drainage District No. 1, with its three defendant subdistricts, $3,911.14; and Paradise Township Drainage District, $138.91; 17.79 per cent of the total costs and interest was apportioned to the defendant districts; this report and apportionment was approved by the Harrison County Board of Supervisors on December 3, 1935, and the order of approval directed that a copy of the report of apportionment and of the order of approval be sent to the Board of Supervisors of Crawford County, with a request that it take the necessary proceedings to assess and levy upon the assessable property in the defendant districts the respective sums of money apportioned, in the manner required by statute, and that all assessments collected be kept in a separate fund and transmitted to the treasurer of Harrison county to be credited to the plaintiff district.

The assessments apportioned to the Latta Drainage District and the Upper Boyer Drainage District were duly levied by the board of Harrison county. Four suits by mandamus and injunction were brought by individuals against that board of supervisors to recover assessments which had been paid and to enjoin the collection of others not paid. The relief was denied; and the decrees were affirmed by this court in Coe v. Board of Supervisors (and three other cases), supra, 229 Iowa 798, 295 N. W. 151.

The record as to the notification of the Board of Supervisors of Crawford County of the apportionment to the defendant districts is not definite as to the time. Plaintiffs claimed, and it was agreed, that the Harrison county auditor and his clerk during 1931 to 1938 would testify that the report of the commissioners and a copy of the minutes of the meeting of December 3, 1935, were duly mailed to the auditor of Crawford county on December 11, 1935. The auditor was dead at the time of the trial and his successor testified that the said letter of December 11, 1935, with contents, came into his hands sometime in the fall of 1937, from whom or how he did not say, and he then delivered same, that day, to the board of supervisors, who delivered it to the county attorney, who retained it until the

trial. The assessments were never levied by the defendant board. On December 2, 1938, the plaintiff board filed another claim and demand for the levy of the assessments as apportioned. On the same day the petition in this suit was filed and service of original notices was made on the defendants. The petition alleged such matters of fact herein stated as were necessary to be pleaded and prayed the issuance of a writ of mandamus directing the levy of assessments as apportioned in the sum of $4,050.07, with interest from December 3, 1935, at six per cent per annum. Defendants filed answer alleging twenty defenses of various kinds, but since the only defense upon which error is relied upon for reversal is the failure of the court to hold that the suit was barred under the three-year limitation of section 11007 (4) of the 1935 Code of Iowa, we do not set out the other defenses.

The trial court held that all defenses other than said statute of limitation were available to the defendants only upon an appeal from the order complained of, and that, since no appeal was taken, all such defenses were waived. The court held that since defendants had not appealed they could not question the amount of interest included in the amount apportioned, but held that no interest should be allowed between the dates of December 3, 1935, and December 2, 1938, when a formal claim and demand were filed, its reasons being that the alleged letter of December 11, 1935, with enclosures, was too informal a notification or record upon which to base an assessment. The court therefore established the claim in the sum of $4,050.07, with interest at five per cent per annum from December 2, 1938, and directed the defendant board and members to levy against the property in the Boyer Drainage District No. 1, Sub-District No. 1 (Arion), Sub-District No. 2 (Riddle Cook), Sub-District No. 3 (Boyer Township), and Paradise Township District, assessments, respectively, in amounts sufficient to pay the sums of $3,877.66, $12.57, $8.71, $12.20, and $128.93, with interest as provided, and to collect and pay these assessments as prayed in plaintiffs' petition. The court also held that the cause of action against the defendants had not accrued until the apportionment of the expenditures had been approved on De-

cember 3, 1935, and that since the action was begun on December 2, 1938, the three-year statute of limitations, Code, 1935, section 11007(4) had not run against the suit.

I. The error relied upon for reversal is thus stated by appellants:

"The trial court erred in holding that the three-year Statute of Limitations did not start to run against the plaintiff district until there was a duty on the part of the defendant districts through the Board of Supervisors of Crawford County, Iowa, to make an assessment and in holding that this was subsequent to the apportionment by the Harrison County Board and that this action was not barred by the three-year Statute of Limitations."

They contend that since the last warrant issued in 1930 was on September 12th, the three-year statute became a bar for all warrants issued in 1930, on September 12, 1933. For the same reason, they argue that all warrants issued in the years 1931, 1932, 1933, and 1934 became barred on the expiration of three years from the date of the last warrant issued on each year, or, respectively, October 12, 1934, December 3, 1935, January 9, 1936, and October 12, 1937. They cite no statutory provision in the drainage law, nor any other statutory provision, nor any decision of this court construing such statutory provisions that gives any support to their contention. Keeping an open ditch free from obstructions caused by silt, cave-ins, washouts, freezing and thawing, excessive rainfall, and other causes, is a continuous job throughout most of every year. The work must be done and it must be paid for in warrants drawn upon an account which has no funds until they have been supplied by future assessments. The expense of appointing an engineer and two others as a commission to make an apportionment is necessarily considerable. It is not an economy to do it for a few warrants or a small expenditure. There is no requirement that the apportionment shall be annual and include only the warrants issued during each year. The account for expenditures is usually a continuous running account, as it was in this case. The board of trustees or of supervisors, having the obligation of determining when the work shall be done and seeing

that it is done, must necessarily be given a broad discretion in making apportionments. The court passed upon this identical apportionment in Coe v. Board of Supervisors, supra, 229 Iowa 798, 802, 295 N. W. 151, 154, and, speaking through Justice Sager, said:

"It is also urged that at the time the assessment was made, the right on the part of the Board to make it had been barred by the statute. That period, it is said, was five years either from the time of the completion of the work, or from the time the warrants were issued. * * * it is said that a right of action on drainage warrants accrues when they are issued; that the Board of Supervisors have no power to toll the statute nor to waive it; that a cause of action against a public officer is barred in three years, and one on an unwritten obligation in five years. It would seem to require no argument to prove that we are not confronted with any such questions. We are not cited to, nor have we been able to find, any statute which requires the spreading of an assessment year by year for the cost of keeping a drainage system in operation as was done here from the years 1930 to 1934."

That decision is decisive against this position taken by the appellants. See, also, Board of Trustees v. Board of Supervisors, supra, 232 Iowa 1098, 5 N. W. 2d 189. The question is not passed upon there, but no question appears to have been raised because the apportionment included repairs made "during the years 1936 to 1939, inclusive."

Appellants rely upon Board of Supervisors v. Board of Trustees, supra, 221 Iowa 337, 347, 264 N. W. 702, 707, an appeal proceeding, but the facts do not make it applicable. In the case before us, the mandamus action was begun within three years from the making of the apportionment, while in the cited case the work was done in 1925, and an illegal and erroneous apportionment was made at that time, and on November 1, 1929, the Pottawattamie board made another apportionment, "but again it was made on the wrong basis." A third apportionment was made on December 22, 1932. This was more than seven years since the claim arose and the right of

action accrued.  The court held the right of action accrued when the apportionment was first made and that the fact that it was an illegal and an unenforceable apportionment did not toll the statute. · The court held that the duty of the benefited district to levy the assessment to pay its share of the expenditure did not accrue until the apportionment fixing the amount of that share had been made.  In that case, Pigeon Creek Drainage District No. 2 in Pottawattamie county was the district in which the improvement and repairs had been made, and Pigeon Creek Drainage District in Harrison county was one of the upper districts which was benefited.  Speaking through Justice Hamilton, the court said:

"It is also necessary to keep in mind that the trustees of the Pigeon Creek drainage district No. 2 [in Pottawattamie county] had no legal right to make an assessment for said costs against the property owners in Pigeon Creek drainage district in Harrison county.  The right to levy the tax does not exist outside of the county in which the district is located.  That right was in the board of supervisors of Harrison county.  The right to make the improvement *and to determine and fix the amount due from each district* under the terms of the statute, according to our prior holdings, was with the board of supervisors in the county where the district in which the repairs, etc., were made was located, or, in this instance, with the board of trustees of Pigeon Creek drainage district No. 2 in Pottawattamie county. *When that was done, a claim originated against the district in the other county.*"  (Italics ours.)

In other words, when the "amount due from each district" was fixed and determined, it then became the duty of "each district" benefited to levy and collect the assessment through the county board of supervisors.  This is sound law and sound policy.  The obligation of the benefited upper districts does not arise or accrue when the work in the lower district is performed or when the warrant of that district is issued for the work.  The benefited district is not obligated to pay that warrant or any other warrants.  That obligation is on the issuing district.  The obligation of the benefited upper district is to pay its proportionate share of all warrant indebtedness as deter-

mined by the benefit it receives. But this obligation does not arise until its share has been determined and apportioned by the commission and passed upon by the board of supervisors of the county in which the lower or repairing district is located.

In support of their contention, the appellants cite Prescott v. Gonser, 34 Iowa 175; Baker v. Johnson County, 33 Iowa 151; Wilson v. Stipp, 194 Iowa 346, 189 N. W. 665; Kinsey v. Louisa County, 37 Iowa 438; and Lovrien v. Oestrich, 214 Iowa 298, 242 N. W. 57. The principle of law followed in these cases is a sound one but it has no application to this case. The distinction between the cited cases and the one before us is made clear in 37 C. J. 966, section 343, where it is stated:

"Where the demand is a preliminary step referring only to the *remedy* and not to the *right*, the action will be barred if the demand is not made within the statutory period." (Italics ours.)

In the cited cases the preliminary matters pertained solely to remedies on obligations fully accrued, while in this case the matter is not only something more than a preliminary demand but it is the performance of an act essential to create the right against the defendant districts and their obligation to levy. See, also, 16 California Jurisprudence 492, 494, for the following clear statement of the distinction, to wit:

"It has been said that a distinction may well be drawn, so far as the statute of limitations is concerned, between cases in which a demand is merely a preliminary requirement to the bringing of the suit, and those in which a demand is a condition precedent to a right, as to a right to a return of property. * * * Where a demand is *an integral part of a cause of action*, the statute of limitations does not run until the demand is made." (Italics ours.)

The reason for the distinction is clearly pointed out in the Prescott v. Gonser case, supra, 34 Iowa 175, 180. The matter is quite fully discussed in Gregg v. Middle States Utilities Co., 228 Iowa 933, 945–955, 293 N. W. 66, 132 A. L. R. 415. The holding of the trial court on this issue was clearly right.

■ II. We do not agree with the holding that the enclosures in the letter of December 11, 1935, to the auditor of Crawford county, were too informal and too indefinite a basis for the spreading of the assessment on the property in the appellant districts. As said by the court, in Mayne v. Board of Supervisors, supra, 208 Iowa 987, 990, 991, 223 N. W. 904, 906: "We have repeatedly stated that, in proceedings of this kind, technicalities and exactness in pleadings and objections are not required."

In that case a "petition" was filed instead of "objections." The court further said:

"While, of course, there is no provision in the statute for the filing of such a petition, we feel that this brought the question before the board, and, their attention being called to the fact that these landowners were insisting that part of the cost of the improvement should be paid by the land in District No. 8, this is a sufficient presentation of this question to the board, even though it is not specifically set out in the objections filed * * *."

Here the report of the commissioners and the order of Harrison County Board gave Crawford County Board full information and demanded the levy.

A more troublesome question is, When was this letter received? Had the appellees set out all of the facts essential to the presumption that a mailed letter is received by the addressee, we would have no hesitation in holding that the auditor received this letter shortly after it was mailed, particularly, in view of the fact that there is no direct denial that the auditor did receive it, and the testimony seeking to rebut the presumption of delivery is so unsatisfactory. See Central Trust Co. v. City of Des Moines, 205 Iowa 742, 746, 218 N. W. 580, 582; Forrest v. Sovereign Camp W. O. W., 220 Iowa 478, 480, 261 N. W. 802; Watson v. Richardson, 110 Iowa 673, 80 N. W. 407; Wry v. Modern Woodmen of America, 222 Iowa 1179, 1186, 1187, 271 N. W. 300. However, it is admitted that the letter with the enclosures was received "sometime during the fall of 1937." No attempt was made to levy the assessments.

There is no question that the expenditures were made as

found in the engineer's audit. It is a reasonable inference that the improvement of the outlet benefited the landowners in the appellant districts. Any question about these matters could have been raised and determined on an appeal, which the appellants did not see fit to take. We find little equity in the position taken by appellants. Having received the benefits they should pay for them.

The decree is therefore affirmed in all respects.—Affirmed.

All JUSTICES concur.