CENTRAL TRUST COMPANY, Appellee, v. CITY OF DES MOINES, Appellant.

MARCH 13, 1928.

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, Don G. Allen,* and *George W. Vest,* for appellant.

*Miller, Kelly, Shuttleworth & McManus* and *Alex. M. Miller,* for appellee.

MORLING, J.—The plaintiff's right of recovery and defendant's failure to sustain six of its counterclaims are not disputed. The question is whether there was sufficient evidence to go to the jury on the two remaining counterclaims. These two coun-

terclaims are based on a contract dated July 24, 1916, for paving East Fourteenth Street, and a contract dated April 25, 1917, for paving East Court Avenue. Defendant in argument concedes that the Fourteenth Street paving was completed November 15, 1916, and the Court Avenue paving was completed August 15, 1917.

The contract sued on was made November 29, 1922, and assigned to plaintiff January 2, 1923. Assignment and notice thereof filed with defendant January 11, 1923. The repairs on the pavings for which the defendant counterclaims were done more than six months after the notice of assignment of contract to plaintiff,—namely, July 27 and 28, 1923. Plaintiff's contention is that defendant did not have any counterclaims at the time that plaintiff gave to defendant notice of the assignment, January 11, 1923, and therefore, under Section 9451, Code of 1927, the assignments were not subject to counterclaim. Plaintiff rests this contention on a number of grounds, the principal one argued being that defendant has failed to prove that, before defendant had notice of the assignment, it gave notice to the contractor, James Horrabin & Company, of defects in the pavements, as required by the contract. Defendant's claim is that the notices were given by registered mail, and the question here is whether the evidence of mailing the notice was sufficient to go to the jury.

The paving contracts on which the counterclaims are based require all material and workmanship to be ''of such character that the pavement shall endure without need of repairs during a period of five years from and after the completion thereof. That in case any sign of disintegration appears, or any defects or depressions occur within said period * * * except such as are without the fault of the contractor, caused by reason of excavations in the pavement, and except such defects as arise from causes not incident to the ordinary use of street pavements; then the contractor will, within ten days from the time of being notified of such defect, make the same good or will pay to the city of Des Moines the reasonable cost of remedying such defect. It being the intention that the party of the first part [contractor] hereby guarantees that the improvement herein specified shall be and remain (except as to defects that may appear, or repairs, which may be needed by reasons of excavations * * * at

the end of five years from the completion thereof in as good condition in all respects as when completed and as required by the contract * * * and shall be and remain a good, substantial, reliable and durable pavement in material and workmanship as a whole and in all its parts except ordinary wear. Provided, it shall be the duty of the party of the first part, or his sureties, to notify the superintendent of the department of streets and public improvements in writing, to inspect said improvement, within thirty days prior to the expiration of said term of five years, and until the said superintendent shall be so notified, the above obligation to maintain said improvement in good condition and repair shall continue * * * ''

In accordance with the theory on which the case was submitted below and here, we assume that the notice might be given by mail, and unless and until it was given, the defendant had no counterclaim available under the provisions of Section 9451. Without proving notice, defendant proved no cause of action.

The contractor, Horrabin, was called as a witness for defendant, but did not admit receiving the notices. Defendant relies on the testimony of Hoffman, to prove mailing. Hoffman was chief clerk of defendant's engineering department since November, 1922. He had been connected with the office before that time. Blagburn was Hoffman's immediate predecessor as chief clerk, but Blagburn is dead. Hoffman produced at the trial what purported to be copies of notices to the contractor and sureties, with purported post-office registry and return receipts. The post-office registry receipts were in the usual form, giving the number of the article, the postmark, and the return address, ''Return to City Street Dept., Des Moines, Iowa.'' They did not show the name of the addressee, except that the receipt on the return card purported to be signed in the name of James Horrabin & Company, by an agent. There is no evidence of the genuineness of the signatures, or of the authority of the purported agent. There is no evidence that any of the notices were inclosed in an envelope or wrapper, or that they were addressed to the contractor. No evidence of what was his post-office address, except that he testified that he had lived in Des Moines for a number of years, and the postmark of the delivering office is Des Moines, Iowa. There is no evidence that postage was prepaid, and none that the notices were in the pack-

ages for which the alleged receipts were given, or were actually delivered in the United States mail, except that, on plaintiff's cross-examination of Hoffman, Hoffman testified that he personally mailed two of the notices. The testimony having been brought out in this manner on cross-examination, we may, for the purpose of discussion, without deciding, assume, as against the cross-examining party, and in the absence of objection by either party, that evidence that the notices were "mailed" included inclosing, addressing, prepaying postage, and depositing in the mail. See *Brooks, Boardman & Ford v. Day*, 11 Iowa 46. These two notices, however, pertain to the Fourteenth Street job. One is dated March 14, 1919. The registry receipt for it is dated March 15, 1919. The other is dated January 30, 1920, and the receipt for it dated January 31, 1920.

The contractor testifies, without contradiction, that he made repairs on the Fourteenth Street paving in 1920 and 1921; "that Hurley [who was inspector of defendant's street department] told me what repairs to make on that job in 1921. We made all the repairs he wanted on that job in 1921." On cross-examination, he testifies that that pavement "was rotten," but also that it "was rotten because the men who had charge of the mixture of it did not know what they were doing, and I had a $5,000-a-year man out there, and they took everything out of his hands, and mixed it to suit themselves,"—that is, the city inspector and city chemist. He says that they made too rich a mixture, and "the city takes charge of this paving outfit, and they told me what to put in." He says also that he was out there every year since he made the pavement.

"We turned the outfit over to Mr. Hurley, and let him make all the repairs that were necessary. * * * I could not say whether the pavement was done according to specifications. It was done according to specifications, as far as I could control it."

The repairs made in July, 1923, cannot, on this evidence, be found to have been made on account of the defects for which the notices of 1919 and 1920 were given.

With respect to the other notices, defendant offered to show by Hoffman that he had charge of mailing out the notices, and that the procedure was "that of preparing the notices and having attached thereto the signature of the superintendent of

the department of streets and public improvements and preserving a copy of said notice; that they have the notice then placed and deposited in the mails of the United States, either by the chief clerk personally or by someone directed by him, the exact name of the individual being unknown,—or rather, being unable to state,—connected with each specific letter; but that the receipt for the letter so deposited and given by the post office is attached to the copy preserved, and the return receipts received from the delivery of the registered mail are attached to the copy so preserved, and the same thereby becomes one unit, and a matter of public and official record of the city of Des Moines; and the said offer is made that the said procedure was followed in the manner of'' the notices which have been referred to.

In order to raise a presumption of delivery of a paper through the mail, there must be: (1) the necessary evidence of the contents and execution of the paper; (2) evidence that it was inclosed in a wrapper, or otherwise prepared for transmission through the mail; (3) evidence of the correct post-office address of the person to be charged with receiving it; (4) evidence that the package containing the document was properly addressed; (5) evidence that postage was prepaid; and (6) evidence that it was deposited in the mail for transmission. 22 Corpus Juris 96 et seq.

The essential elementary facts may be shown by course of business properly proved, but an offer of proof by course of business, as well as an offer of the testimony of a witness on the stand, must be directed to facts, and not to mere conclusions; and the facts proposed to be proved must be legally sufficient to support the inference sought to be drawn therefrom. The offer had no tendency to prove the elements of transmission by mail. If the notices were inclosed, addressed, and stamped, there was no evidence as to where they were placed, who handled or took charge of them, or what the facts were with reference to getting them into the post office or letter box. The offer of testimony did not go to those ultimate facts. Defendant offered evidence that the notices and receipts were assembled and kept in its files. There is no evidence authenticating the purported post-office receipts, and no evidence that

the return receipts were received by defendant through the mail. Such documents do not prove themselves.

Defendant could have had notices served in such a way that there would be no trouble about establishing the fact. When it adopted the plan of sending out registered letters, defendant could have taken such precautions as would have enabled it to prove the fact of mailing. The matter of giving notice, of the actual receipt of documents by the party to be charged therewith, is too important to permit the acceptance of such vague and inconsequential evidence as was offered in this case as sufficient to raise any presumption. That the contractor did not say he did not get the notices does not cure defendant's failure to prove that he did. Previous decisions of this court cited by defendant in which presumption of receipt of letter by the addressee was entertained were made on evidence showing observance of the preliminary requirements on which the presumption may be based. *DeBolt v. German Am. Ins. Co.*, 181 Iowa 671, 678; *County of Pocahontas v. Katz-Craig Contracting Co.*, 181 Iowa 1313, 1320; *Pennypacker v. Capital Ins. Co.*, 80 Iowa 56; *Gregory v. Kirkman Cons. Ind. Sch. Dist.*, 186 Iowa 914, 920; *First Nat. Bank v. Way*, 167 Iowa 426.

Furthermore, Hurley testifies that the repairs made July 27, 1923, on the East Court Avenue job "were necessary, in my judgment, to be put in, due to the regular wear of the paving," and that those made on the East Fourteenth Street paving, July 28, 1923, "were necessary, except where made at the joints, due to the regular wear of the pavement." He does not say that there were any defects in workmanship or material. The contractor was not responsible for ordinary wear. These repairs were made long after the expiration of the five years' maintenance provision; but defendant argues that plaintiff has not shown that the contractor gave notice to inspect within 30 days prior to expiration, and that, therefore, the maintenance clause remains in effect. But it devolves on the defendant to show, as against the assignor of the contract, that, on the date on which it received notice of the assignment, it had a counterclaim which was then good as against the assignor. The defendant's evidence that the patches were made July 27, 1923, and were rendered necessary by the regular wear of the pavement, falls far short of showing that a breach of the contractor's

obligations had occurred on January 11, 1923, and that the patches were made necessary thereby.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.