In June, 1925, George H. White became the purchaser of a tract of land comprising 429 acres, and being a part of a certain Section 22. This tract contained two sets of farm buildings. For reasons to be hereinafter stated, he conveyed a 1. INSURANCE: substantial part of such tract to Matha A. cancellation White. One set of buildings located upon the of policy: portion of the tract conveyed to Martha A. attempted White, and the other set was located on the cancellation portion of the tract retained by George H. contrary White. For convenience of later discussion, we to by-laws: set forth the following plat of this tract, effect. which indicates the parts thereof held respectively by George H. White:
[EDITORS' NOTE: FLAT IS ELECTRONICALLY NON-TRANSFERRABLE.]
The oblique line representing the eastern boundary of the 429-acre tract represents also the line of a ditch, known as the "West Fork Ditch." The respective locations of the two sets of buildings are indicated by the letters "X." A policy of insurance known as No. 3044 was executed by the defendant, purporting to cover the buildings owned by George H. White. Another policy of insurance, known as No. 3045, was executed by the defendant, purporting to cover the buildings owned by *Page 1054 
Martha A. White. These policies proved to be inaccurate in their descriptions of the buildings, respectively. The buildings purporting to be insured in policy No. 3044 included a barn and corncrib and a poultry house.
Immediately preceding the issuance of such policies, the Travelers Insurance Company, as mortgagee, had negotiated real estate loans, secured by mortgages, for $16,500 on the Martha A. White portion, and for $18,500 on the George H. White portion. It was a part of the requirement of this mortgagee upon the mortgagors that they carry insurance, and that the same be made payable to the said mortgagee. Such mortgage clauses were attached to each policy, and were delivered to the plaintiff, and were at all times held by it. In October, 1927, the barn located upon the George H. White land was destroyed by fire. Notice of the fire was duly given to the defendant by Anderson Clark, the agents of George H. White. In response to such notice, the secretary of the defendant asserted that the policy had been duly canceled, on May 31, 1927, for failure of the insured to pay an assessment duly made in January of the same year. Such cancellation appeared upon the records of the defendant by entries made thereon by its secretary, Hathaway. Prior to such cancellation, notice of intention to cancel was sent to George H. White by registered mail, as required by the bylaws. A purported notice was also sent to the plaintiff by mail, unregistered, which notice was never received by plaintiff.
We consider first the question whether the purported cancellation was effective as against the plaintiff.
I. The mortgage clause attached to the insurance policy purported to render the insurance payable to the plaintiff, as mortgagee. It contained the following proviso:
"It is hereby agreed that this insurance, as to the interests of the above-named mortgagee, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by any change in title or possession, whether by legal process, voluntary transfer, or conveyance of the premises. Provided that the mortgagee shall notify this association of any change of ownership or increase of hazard which shall come to the knowledge of the said mortgagee, and shall have permission for such change of ownership or such increased hazard, duly endorsed on this policy. The association reserves the right to *Page 1055 
cancel this policy at any time in accordance with the terms therein provided ten (10) days' notice of its intention to do so shall be given the mortgagee, after which notice the policy and this agreement shall be void."
It is to be noted from the foregoing that notice to the mortgagee of intention to cancel the insurance was a condition precedent to such cancellation, so far as such mortgagee was concerned.
Section 3 of the by-laws of the defendant-company provides as follows:
"If any member fails to pay his or her assessment within the time specified, the secretary shall, after five days, in person or by registered letter, notify such member that ten per cent is added to his or her assessment as costs of collection and citing the delinquent to pay same with the cost, within thirty days, under penalty of forfeiture of insurance, and that at the end of said thirty days, his or her insurance shall be suspended or canceled, unless such payment shall have been made;"
There is no other by-law covering the subject of notice of intention to cancel. The defendant-company gave notice by registered mail to George H. White, as required by the by-laws. It gave a similar notice to H.C. Adams Company. This company had formerly been the representative of the plaintiff-company in the making of mortgage loans, and it was such representative at the time of the making of the mortgages in 1925. Its agency, however, had terminated long before the fire loss in this case, and notice to it was not effective, as against the plaintiff. The secretary of the defendant-company testified, however, that he sent notice to the plaintiff by an unregistered letter. Under the testimony for the plaintiff, no such letter was ever received by it. Was it a sufficient compliance with the precedent condition contained in the proviso above quoted that the defendant-company should mail an unregistered letter to the plaintiff, regardless of whether such letter reached its destination or not? Only two forms of notice are contemplated in the bylaws. One of these is a notice "in person," and the other is a notice by "registered letter." A notice "in person" is necessarily actual notice. It was requisite, therefore, upon the defendant to show, either that it had given notice by a "registered *Page 1056 
letter," or that it had in some other manner given actual notice to the plaintiff. A letter mailed to an addressee would become actual notice to such addressee upon receipt thereof. The secretary of the defendant-company, as a witness, reconstructed what he believed to be the form of contents of the unregistered letter which he claims to have sent to the plaintiff-company at its proper address, at Hartford, Connecticut. This reconstructed letter was made by using the printed blank form of the defendant-company and inserting certain writing in the blank spaces therein. In setting the same forth herein, we indicate the written portion of such reconstructed letter by italics, and the printed matter by ordinary type.
"If not paid before May 31, 1927, your policy will be suspended and canceled on that date.
"Monona County Farmers Mutual Fire Ins. Assn.
"Assessment No. 21
"Onawa, Iowa, May 10, 1927
"To Travelers Insurance Co., Mortgagees,Hartford, Conn.
"Your Assessment on Policy No. 3044 is $11.85
" No. 3045 is 15.15
"Return one copy with remittance.
"J.M. Hathaway, Secy.
"After due notice George H. White and Martha A. White have failedto pay their assessment."
If we assume the sufficiency of the form of the foregoing to constitute notice, if received, the question still remains: Did the plaintiff receive the same? The testimony in its behalf is positive that it did not. We may grant that defendant's proof of mailing such a letter to a proper address, duly stamped, would beprima facie sufficient to show that the letter arrived at its destination, in ordinary course of mail. That is to say, the court, as a trier of fact, could indulge such an inference. But the burden of the affirmative is, nevertheless, upon the defendant. The inference referred to is ordinarily indulged in by the court only in the absence of evidence to the contrary. The conflicting testimony and the effect of it may be summarized in a word. If the defendant actually mailed such a letter, the probability is great that it reached its destination. On the other hand, if the *Page 1057 
plaintiff never received such a letter, the probability is great that it was never mailed. In that sense, the evidence for the plaintiff is directly contradictory to the evidence for the defendant. We may assume that one witness is as credible as the other. This only presents an illustration of the hypothetical equipoise, which seldom comes into being as a practical fact. In attempting to give the notice in the manner in which it did, the defendant wholly ignored its own by-laws. It must, therefore, rest under the burden of proving actual notice to the plaintiff, and this it has failed to do.
By our foregoing discussion, and by our reference to the by-laws, we are not holding that the by-laws are binding upon the mortgagee. We have discussed them only as presenting the most favorable point of view for the defendant-company. It is sufficient to say that the mortgage-clause attached as a rider is binding both upon the mortgagee and upon the insurer. Its terms are specific and complete.
II. Under its general denial, the defendant stresses the contention that the barn insured under Policy 2. INSURANCE: No. 3044, issued to George H. White, was not contract in burned, and that, therefore, there is no general: liability. There was but one barn on the George reformation H. White property. That barn was burned. Such for mutual barn was apparently described in the policy by mistake: its dimensions, but such description was sufficiency erroneous. It is for that reason that the of showing. plaintiff seeks reformation.
The defendant contends also that the mistake, if any, was not mutual, in that there was no mistake on the part of the defendant-company. The application for this insurance was made by letter from Anderson Clark, the loan agents through whom White had negotiated his loan. It appears that the defendant-company had outstanding two policies upon these same sets of buildings, issued to the grantor of White. Anderson Clark obtained possession of these policies, and returned them to the defendant-company, with the request that policies be issued to George H. and Martha A. White. The letter of Anderson Clark to the defendant contained the following:
"We are enclosing you Policies No. 2749 and No. 2762 on the George H. White farm, which is covered by policy No. 2762 *Page 1058 
and the other policy No. 2749 covers the buildings on the farm owned by Martha A. White."
The foregoing statement was erroneous in its statement that Policy No. 2762 covered the buildings on the George H. White farm. This error doubtless misled the secretary of the defendant-company, and resulted in error on his part, as will be indicated later. This letter, however, indicated clearly that the buildings on the George H. White farm were to be covered by one policy and the buildings on the Martha A. White property were to be covered by another policy. Upon receipt of this letter, Hathaway, the secretary of the defendant, went upon the premises and looked over the two sets of buildings. There was a barn to be insured in each set. The secretary included a barn in the description of buildings in each set. He stated the dimensions of the respective barns in the respective policies. He took these descriptions from the old policies 2749 and 2762. In Policy No. 3044 he stated the dimension of the insured barn to be 46 x 50, with 12-foot posts; whereas the true dimension of said barn was 34 x 36, with 14-foot posts. The reverse mistake was made in the Policy No. 3045, issued to Martha A. White. The dimension of the barn on that property was stated as 34 x 36, with 14-foot posts; whereas in truth the dimension of that barn was 46 x 50, with 12-foot posts. It is because of this error of description of the dimension that the defendant contends that the barn upon the George H. White property was not insured in the George H. White Policy No. 3044. That it was the mutual intent of the parties to include in Policy No. 3044, to George H. White, the barn on the George H. White property, is rendered too clear by the record to justify dispute. Hathaway himself testified on this subject as follows:
"In writing the two policies in question, I looked over the buildings, and I knew there were two sets of improvements, one set on the tract covered by the mortgage given by George H. White, and the other set on the tract covered by the mortgage given by Martha A. White * * *. Q. Well, then, you admit [assumed] when you wrote the policy for Martha A. White that she was the owner described therein, did you not? A. Yes, sir. Q. And the same is true with reference to the policy you issued in the name of George H. White, — you assumed that he *Page 1059 
was the owner of that property? A. I did. Q. You thought that you were issuing the policies in the names of the respective owners, did you not? A. I did. Q. That was your intention, was it not? A. It was. Q. And if you had known at the time that there was any mistake, you would have rectified it then, would you not? A. Yes, I think I would. Q. Then you certainly never intended to issue a policy on property that was not owned by the insured? A. No, I never do that if I can help it."
Upon the foregoing record, we must hold that there was a mutual mistake of the parties in the descriptive statement of the dimensions of the barn in Policy No. 3044. If, therefore, reformation of the policy be essential to a recovery thereon, the plaintiff is clearly entitled to it. Thomason v. Capital Ins.Co., 92 Iowa 72. Whether recovery might be had at law, and without reformation, we need not decide. Equity will treat the policy in accord with the actual intent of the parties, and will read into the same the correct dimensions of the barn. As so reformed, the policy will be deemed to cover the barn on the George H. White farm, which was destroyed by fire.
III. In January, 1929, the plaintiff filed an amended petition, wherein it set up Policy No. 3045, issued to Martha A. White. By such amended petition reformation was prayed of Policy No. 3045, on the ground that it also contained a mutual 3. APPEAL AND mistake. As against this pleading, the defendant ERROR: pleaded the bar of the statute of limitation, on review: the ground that the suit on Policy No. 3045 had scope and not been begun within one year after the extent: maturity of a cause of action thereunder, if moot any. We have no need to consider the question questions. thus raised. Nor have we need to give consideration to the reformation of Policy No. 3045. The buildings intended to be insured by that policy are all intact. No loss occurred thereunder. It has expired by its own terms, and the plaintiff has no further interest therein. Whatever question is now raised thereon has become wholly moot.
By the same amended petition, filed in January, 1929, the plaintiff prayed a reformation also of Policy No. 3044, so far as the description of the dimensions of the barn was concerned. *Page 1060 
4. LIMITATION The defendant pleaded the statute of limitations OF ACTIONS: as against the reformation of Policy No. 3044 computation also, on the theory that such amendment was of period: filed more than one year after the repudiation amendment of the policy by the defendant, in November, for new 1927, and on the ground that this amended relief petition set up a new cause of action. after action barred.
So far as Policy No. 3044 is concerned, the amendment was not a statement of a new cause of action. The right, if any, to reformation of the instrument was an incident of its original cause of action, and inhered therein as a part of the ultimate remedy to which the plaintiff might be entitled.
It may be further noted that, under Section 9048, Code, 1927, "no action on any loss shall be begun until the date when such loss becomes due in accordance with the articles of incorporation or by-laws of such association and in no event sooner than 40 days after such proof," etc. Under the by-laws herein, the defendant was not required to pay the loss until the expiration of 90 days from the receipt of notice of the loss. No suit could have been maintained by the plaintiff prior to the expiration of such period. The statute, therefore, would not start until the expiration of such period. The amended petition was filed within one year from the expiration of such period. From either point of view, therefore, the plea of the statute is without merit.
IV. We have aimed to confine our foregoing statement of the record to the controlling facts, and, for the sake of simplicity, we have avoided reference to some features of the evidence upon which considerable argument has been expended. 5. INSURANCE: It does appear that Martha A. White held her insurable legal title in trust for George H. White, and interest: that the conveyance to her had been made as a naked matter of convenience only. The conveyance of title the legal title to Martha A. by George H. holder. involved no fraud of any nature. It was done because the policy of the plaintiff, as a loaning mortgagee, forbade loans in excess of $20,000 to the same person. For the purpose, therefore, of enabling George H. to obtain two loans to the total amount of $35,000, Martha A. accepted from him a conveyance to her, and she executed a mortgage thereon for $16,500, and gave her own promissory note *Page 1061 
therefor. Thereafter, she conveyed the property back to George H. It is contended in argument by appellee that, because George H. was the beneficial owner of all the property, then both insurance policies inured to his benefit alone, and that his only right of recovery for the fire loss, if any, would be upon Policy No. 3045, wherein the correct dimensions of the barn were given.
The right of George H. White to take out a separate insurance policy upon the set of buildings to which he held the legal title was in no sense impaired by his conveyance in trust to Martha A. In arriving at the intent of the parties in the issuance of Policy No. 3045, we must look upon the separate titles as they existed and as they were understood to exist by the defendant-company. Whether the facts herein recited could have been set up as a defense against Martha in an action by her under Policy No. 3045, we have no occasion to consider. The existence of the trust has no materiality to the right of the mortgagee to recover upon Policy No. 3044 in accord with the terms of the mortgagee clause.
Notwithstanding that Martha held her legal title in trust, she acquired, nevertheless, a right or interest in the property in her own behalf. For the benefit of George H., she executed her own note and mortgage for $16,500. She thereby acquired the right to have the real estate and its buildings appropriated to the payment of the mortgage for her own protection. She had, therefore, an insurable interest in the buildings located upon such real estate, and such insurable interest was superior to any right of George H. White's as cestui que trust. She had no interest of any kind in the buildings located on the land not conveyed to her. It could not, therefore, have been the intent of the parties to include the barn of George H. in the policy of Martha A., or the barn of Martha A. in the policy of George H.; and the question of mutual intent is all that concerns us at this point.
V. Lastly, it is urged by the defendant that no proof of loss was ever furnished to the defendant. In view of defendant's prompt denial of liability on the policy, proof of loss, if *Page 1062 
6. INSURANCE: otherwise due, was effectually waived. It is proof of argued by the defendant that it did not in terms loss: deny liability; that it stated only the facts, waiver: to the effect that the policy had been canceled; denial of specious. To assert that the policy was canceled liability: it was entitled to recovery. The argument is too effect. specious. To assert that the policy was canceled on a stated date, was to deny liability.
It is to be noted further that Section 13 of the by-laws of the defendant requires the insured to furnish proof of loss only when the same is demanded by the company. No demand was ever made. As well said in the argument of appellee, it could 7. INSURANCE: not demand proof of loss without waiving its proof of denial of liability. To this we add that it loss: could not deny its liability without waiving waiver of proof of loss. Counsel predicate their argument by-law. at this point upon Section 9045 of the present Code. We find nothing in this section which puts any disability upon an insurance company to waive proofs of loss. It simply fixes a limitation upon the power of such a company to demand proofs of loss. The defendant did receive notice of the loss within a proper time. Having demanded no more, at the proper time, it may not demand the same now.
It is our conclusion that the plaintiff is entitled to the reformation of the policy as to the description of the barn, and that it is entitled to recover on the policy thus reformed for the full amount of insurance actually stated in the policy, less the unpaid assessment due from George H. The amount of the insurance, as originally stated, is $800, and the amount of the unpaid assessment is $11.85. Plaintiff's recovery should include interest on the principal sum from the date that the same became due: viz., 90 days from the date of notice of loss. Either party may move for decree in this court.
For the reasons herein indicated, the judgment of the district court is, accordingly, Reversed.
 MORLING, C.J., and FAVILLE, KINDIG, and GRIMM, JJ., concur. *Page 1063