ROSHEK REALTY COMPANY, an Iowa Corporation, appellant, v. ROSHEK BROTHERS COMPANY, an Iowa Corporation, appellee.

No. 49292.

(Reported in 87 N.W.2d 8)

350

DECEMBER 17, 1957.

Louis F. Fautsch, of Dubuque, and Herrick & Langdon, of Des Moines, for appellant.

O'Connor, Thomas, McDermott & Wright, of Dubuque, for appellee.

GARFIELD, J.—Plaintiff, owner of a large business block in Dubuque, brought this action of forcible entry and detainer under chapter 648, Code, 1954, to remove defendant-lessee and put plaintiff in possession of most of the building. Alleged grounds of the action are that defendant holds over after termination of its lease and contrary to its terms. (See Code section 648.1, subsections 2 and 3.) Pursuant to Code section 648.5 the action was tried as an equitable one. Relief was denied and plaintiff has appealed. Our review is of course de novo. Rule 334, Rules of Civil Procedure.

Plaintiff leased the premises by written lease to defendant for ten years commencing February 1, 1945. Pursuant to provisions of the lease the term was extended to January 31, 1970. The monthly rent was $3125 payable on the first day of each month, plus a percentage of receipts from sales of merchandise by the lessee, payable annually. These percentage payments are not here material. Defendant did not pay its rent for April 1956 on or before May 9 and on the latter date plaintiff undertook to declare the lease forfeited.

The vital provision of the lease, prepared by plaintiff, is:

"(11) DEFAULT: In case the rent for any one month shall be due and remain due and unpaid for thirty days after the same shall become due and payable and demand therefor has been made by the Lessor in writing, such failure to pay said rent * * * shall work a forfeiture of this lease at the option of Lessor, and thereupon the Lessor shall have the right to re-enter and repossess said premises, without action as of its first estate, or may bring its action for forcible entry and detainer under the Laws of Iowa, as it may elect, * * *."

I. The principal controversy is whether plaintiff has shown it made written demand for the April rent as a prerequisite to declaring the lease forfeited. Throughout the tenancy plaintiff customarily mailed to defendant on or about the first day of each month a typewritten statement on a printed form like this:

"ROSHEK REALTY COMPANY
Roshek Building
Dubuque, Iowa

Please detach and return this stub with your check.

Your check returned by your bank will be your receipt.

April 1, 1956
In account with
Roshek Brothers Company
Eighth and Locust Streets
Dubuque, Iowa.

Amount paid $.....................

| April 1, 1956 | April Rent | $3,125.00 |

ROSHEK REALTY COMPANY
Roshek Building
Dubuque, Iowa"

Mrs. Wareham, secretary to secretary-manager Rohde of plaintiff-corporation, testified she mailed by ordinary mail a statement like this to defendant on April 2, 1956, at the same time she mailed two other such rent statements to other tenants. She sent statements similar to the above to over forty tenants but all except the three before referred to were delivered personally by an employee of plaintiff. Plaintiff's offices are in the same

building where defendant has its store and offices and where most of the other tenants evidently are located. Parts of some of the upper floors of the store building are used by other tenants for offices.

Plaintiff contends the statement quoted above customarily mailed out on the first of each month constitutes a written demand for the rent such as the lease requires as a prerequisite to its forfeiture. There is room for argument that the parties to the lease contemplated a written demand in addition to the routine statement sent defendant the first of each month for over eleven years and sent other tenants as well. Part of the statement was apparently intended to be detached and returned to plaintiff for its convenience in bookkeeping. When the lease was made, the presidents respectively of these corporations were brothers each of whom, with his family, owned half the stock of both corporations. Under plaintiff's contention, if defendant's monthly rent check miscarried in the mails following receipt of the monthly statement plaintiff would have an absolute right to declare the lease forfeited without any other communication to defendant.

However, we will assume, without so holding, the statement above quoted constitutes a written demand within the lease provision for forfeiture. Nevertheless we have no hesitancy in deciding plaintiff has failed to carry the burden of showing the alleged demand was made upon defendant. There is no testimony defendant received it. Plaintiff relies wholly upon the rebuttable presumption it was received because, according to Mrs. Wareham, it was properly addressed, stamped and mailed. But we think the presumption plaintiff invokes has been rebutted.

Defendant produced as witnesses all officers and employees who have anything to do with receipt of mail and payment of rent commencing with the man who gets the mail at the post office, sorts it and leaves it on the desk of Mrs. Gilman, the personal shopper. She in turn opens the first-class mail, divides it into piles and takes it to the office of John or Tom Roshek, defendant's vice-president and president respectively, one of whom approves the rent statement. Mrs. Gilman testified she never saw a statement for the April rent and it would never get by without her seeing it, she was looking for it because it had occurred to

her she had not seen it. Both the Rosheks said they never saw any April rent statement. Normally after the rent statements are approved they are left with Miss McGrath to be paid. She testified she never saw a statement for April. Mr. Braig, defendant's treasurer, gave similar testimony.

Plaintiff's secretary-manager instructed Mrs. Wareham not to send defendant a rent statement for May. Previously, on the few occasions during the more than eleven years of the tenancy when the monthly rent was not paid, it was included in and added to the statement for the succeeding month. John Roshek testified the rent was not paid in these few earlier months because statements therefor were not received. On May 9 plaintiff sent defendant *a registered letter* saying the lease was forfeited for nonpayment of the April rent. Mrs. Gilman received it the next day and immediately gave it to Tom Roshek. An extensive, thorough search for an April rent statement was forthwith instituted. Roshek testified he interviewed anyone who could possibly have had anything to do with it. No statement was found in any file, desk or elsewhere.

Defendant then sent for its attorney and a number of defendant's employees were again interviewed without finding any trace of a statement for April. Checks for the April and May rent were made out the same day (May 10) and immediately delivered to plaintiff's secretary-manager. Checks for succeeding months until the trial in August were also delivered to him. Plaintiff never returned or tendered these checks to defendant.

Plaintiff claims a good deal for the fact defendant's witness who picks up the mail at the post office testified he did not see a *blue* envelope with a window in it addressed from plaintiff to defendant and that Mrs. Gilman in some of her answers referred to the *blue* envelope in which rent statements were received. Actually, the statement and the rather large printed return (to Roshek Realty Company, etc.) at the upper left of the envelope were blue but the envelope itself was white. The blue statement of course made the large transparent "window" of the envelope appear blue. Whether the colored statement caused the rest of the envelope to appear light blue is not entirely clear although plaintiff's Mr. Rohde testified it did not. In any event since a

substantial part of the face of the envelope appeared blue in color, references to it as blue by the mailman and Mrs. Gilman are not surprising.

Further, when all Mrs. Gilman's testimony is considered it does not seem materially weakened by her references to a blue envelope. She said: "It is a blue statement and I believe the envelope is a lighter blue, although I am not sure, and it is a window type envelope. * * * During April no blue or other colored envelope from plaintiff reached my desk. No envelope containing a statement, demand or other writing for April reached my desk. * * * I am not sure about the lighter blue envelope, but I know the statement is a peculiar shade of blue."

On rebuttal plaintiff's secretary-manager Rohde testified positively twice that before this action was commenced in August 1956 no one acting for defendant advised him it claimed it had not received an April rent statement. On surrebuttal John Roshek said he informed Rohde on May 15 no such statement was received and defendant's treasurer Braig testified he, in the presence of Tom Roshek, told Rohde over the telephone on May 10 an exhaustive search was made for the statement but it was not found. Tom Roshek corroborated Braig. On surrebuttal Rohde did not deny John Roshek's testimony. As to that of Braig he said, "It is possible Mr. Braig made the statements to which he testified but to my best recollection that was not included in the conversation." Originally, on rebuttal, Rohde said "Definitely no." Evidently plaintiff now claims nothing for this rebuttal testimony.

The most reasonable explanation of defendant's failure to pay the April rent within thirty days after it became due is that the statement Mrs. Wareham testified she mailed did not reach defendant. It is conceded defendant is financially responsible. It has a Dun & Bradstreet rating of triple A-1 with financial responsibility of $1,000,000 or over, highest rating that credit agency gives any company. Defendant's practice is to pay its bills promptly but only upon receipt of invoices or statements therefor. The wisdom of this practice as to such a fixed charge as rent may be open to question. But there seems to be at least some justification for the practice in a large concern like defendant with about 400 employees. In any event a court of equity

356

should not declare forfeited this valuable lease on most of a building worth perhaps $2,000,000 for inadvertent delay in paying one month's rent if the only demand therefor, required by the lease, was sent by ordinary mail and never reached defendant.

 Proof of mailing a statement or letter properly addressed and otherwise conforming to postal laws and regulations concerning postage raises a presumption of fact it was received. The different things which must be shown to give rise to the presumption are listed in Central Trust Co. v. City of Des Moines, 205 Iowa 742, 746, 218 N.W. 580, 582, and Forrest v. Sovereign Camp W.O.W., 220 Iowa 478, 480, 261 N.W. 802. See also Gregory v. Kirkman Consol. Ind. Sch. Dist., 186 Iowa 914, 921, 922, 173 N.W. 243, 246 ("* * * it must be clearly shown that the facts upon which the presumption rests actually exist.") ; 31 C. J. S., Evidence, section 136; 20 Am. Jur., Evidence, sections 197 to 199.

 The presumption is based on the probability officers and employees of the post-office department perform their duty in transmitting and delivering mail. Forrest v. Sovereign Camp W.O.W., supra; Watson v. Richardson, 110 Iowa 673, 677, 80 N.W. 407, and citations; 31 C. J. S., Evidence, section 136a, page 778.

We have said the presumption referred to (or inference, as it is sometimes called) is ordinarily indulged in only in the absence of evidence to the contrary, i.e., that the letter was not received. Travelers Ins. Co. v. Farmers Mutual Fire Ins. Assn. (Evans, J.), 211 Iowa 1051, 1056, 233 N.W. 153. See also Watson v. Richardson (Ladd, J.), supra, 110 Iowa 673, 677, 80 N.W. 407; 31 C. J. S., Evidence, section 136a, page 777.

 We have uniformly held the presumption a letter is received is not conclusive but may be rebutted by evidence it was not received. Pennypacker v. The Capital Ins. Co., 80 Iowa 56, 63, 45 N.W. 408, 8 L. R. A. 236, 20 Am. St. Rep. 395; First Nat. Bk. v. Way, 167 Iowa 426, 428, 149 N.W. 503; De Bolt v. German Am. Ins. Co., 181 Iowa 671, 678, 679, 165 N.W. 55; Gregory v. Kirkman Consol. Ind. Sch. Dist., supra, 186 Iowa 914, 920, 173 N.W. 243. This is almost the universal holding in other jurisdictions. Annotation 91 A. L. R. 161. In many cases the ad-

dressee's denial he received the letter has been held to justify a finding the presumption has been overcome, at least under the particular circumstances. Idem, at pages 166 to 169.

█ Notwithstanding the presumption referred to, the burden to prove receipt of the statement for rent remained on plaintiff throughout the case. Travelers Ins. Co. v. Farmers Mutual Fire Ins. Assn., supra, 211 Iowa 1051, 1056, 1057, 233 N.W. 153; Central Trust Co. v. City of Des Moines, supra, 205 Iowa 742, 747, 218 N.W. 580; 31 C. J. S., Evidence, section 136e, page 786; Annotation, 91 A. L. R. 161, 166 ("and this appears to be the generally accepted view.").

Although the probability is great that if the April rent statement was actually mailed to defendant it was received, the probability is just as great that if defendant never received it it was never mailed. Travelers Ins. Co. v. Farmers Mutual Fire Ins. Assn., supra, last above. See also 31 C. J. S., Evidence, section 136e, pages 786, 787.

█ The presumption defendant received the rent statement could have been strengthened by proof the envelope, which bore a return address, was never returned since there is the same inference or presumption postal employees will do their duty in returning to the sender a letter not delivered to the addressee as that they will perform their duty in delivering it. 20 Am. Jur., Evidence, section 196, page 198; 31 C. J. S., Evidence, section 136a, page 780. Plaintiff (which, as stated, had the burden to show it made written demand for the rent) offered no evidence the envelope containing the statement was not returned to it.

Plaintiff could easily have taken precautions that would enable it to prove without question delivery of the statement for rent. It could have had it personally delivered to defendant as it did with most of its tenants. (As before explained, both plaintiff and defendant officed in the same building.) Or plaintiff could have sent the statement by registered mail with return receipt requested as it did its letter of May 9 declaring the lease forfeited. See in this connection Central Trust Co. v. City of Des Moines, supra, 205 Iowa 742, 747, 218 N.W. 580. Since plaintiff chose to send the statement by ordinary mail it does not seem unfair that it should be required to bear any risk of nondelivery.

██ It is perhaps unnecessary to observe that plaintiff is asking a court of equity to enforce a forfeiture of this lease for inadvertent delay in payment of one month's rent. It is a familiar saying that equity abhors a forfeiture. Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699, 703 ("* * * forfeitures are not favorites of either law or equity, and when they are enforced, those claiming them should show that the equities are clearly on their side."); 19 Am. Jur., Equity, sections 84, 86; 32 Am. Jur., Landlord and Tenant, section 872; 30 C. J. S., Equity, section 56a; 51 C. J. S., Landlord and Tenant, section 102 ("Forfeitures * * * are not favored by the courts."). See also Heiple v. Reinhart, 100 Iowa 525, 528, 69 N.W. 871.

██ We must deny plaintiff the relief sought because, as above explained, it has failed to prove it made written demand on defendant, as the lease requires, for payment of the April rent.

II. There is another reason plaintiff is not entitled to prevail. Code section 648.18 provides: "Thirty days peaceable possession with the knowledge of the plaintiff after the cause of action accrues is a bar to this proceeding."

██ As previously stated, plaintiff declared the lease forfeited as of May 9, 1956, by letter delivered to defendant the next day. The three-day notice to quit required by Code section 648.3 "Before action can be brought" was served June 1. Service of such notice did not constitute commencement of the action. Section 648.3 indicates giving the notice must precede commencement of the action. See Heiple v. Reinhart, supra, 100 Iowa 525, 530, 69 N.W. 871; McRobert v. Bridget, 168 Iowa 28, 33, 34, 149 N.W. 906; Town of Lakota v. Gray, 240 Iowa 193, 197, 35 N.W.2d 841, 843. The action was begun August 10. (The petition was sworn to June 30.) The cause of action plaintiff asserts accrued not later than May 10. McClelland v. Wiggins, 109 Iowa 673, 81 N.W. 156.

██ Defendant had possession of the leased premises "with the knowledge of the plaintiff" at all times. If this possession was peaceable certainly this action is barred by section 648.3. Plaintiff seems to rely upon two facts in an attempt to avoid this bar. One is that during part of the three months between plaintiff's declaration the lease was terminated and commencement of the

action the parties negotiated regarding a new lease or defendant's purchase of the building. Last of these negotiations appears to have been a written proposal by defendant on July 2 to purchase the building for $2,000,000. Plaintiff made no reply to this proposal.

We are clear these negotiations did not render defendant's possession other than peaceable. It is shown without dispute similar negotiations for a new lease, changes in the terms of the existing one or for sale of the building to defendant took place at irregular intervals throughout much of defendant's tenancy of more than eleven years. Plaintiff's secretary-manager testified many conferences between the parties regarding these matters occurred during the last six or eight years. So far as these negotiations are concerned defendant's possession was just as peaceable throughout the three months immediately preceding commencement of this action as it was prior thereto. There is no room for argument that such prior possession was not peaceable.

The second fact, on which plaintiff seems to rely more strongly, is that its secretary-manager told John Roshek about May 15 he assumed the lease was terminated. Roshek replied that was only an assumption on his, Rohde's, part and any cancellation of the lease would have to be established by the court. Rohde also testified his discussions after May 9 were on the assumption (not again communicated to defendant, so far as shown) the lease was terminated. Mr. Rohde admitted plaintiff made no attempt to move anything out of the leased premises, close the store or lock the door so people could not gain access to it. No action was brought over possession of the premises other than the present one.

We are not persuaded Rohde's mere assumption the lease was terminated, although communicated to defendant's vice-president, rendered defendant's possession nonpeaceable. Testimony to this effect placed plaintiff in no better position in this respect than its formal, written notice to defendant signed by Rohde that plaintiff does declare the lease to have been forfeited and terminated as of May 9. This notice clearly informed defendant plaintiff considered the lease terminated. Mr. Rohde's oral statement he assumed this to be true added nothing to the notice.

Heiple v. Reinhart, supra, 100 Iowa 525, 69 N.W. 871, holds service of the three-day notice to quit does not interrupt the tenant's peaceable possession.

McClelland v. Wiggins, supra, 109 Iowa 673, 81 N.W. 156, holds possession was peaceable, although not with the assent of the owner, notwithstanding it followed a formal written agreement of the parties the lease was terminated.

McRobert v. Bridget, 168 Iowa 28, 32, 33, 149 N.W. 906, like Heiple v. Reinhart, supra, holds possession was peaceable although it followed service of a notice to quit which, of course, indicated the plaintiff did not consent to defendant's possession. See also 36 C. J. S., Forcible Entry and Detainer, section 33, which states that under such a statute as ours "defendant's possession is not interrupted by a notice against trespass not acceded to by him."

Fritch & Himes v. Reynolds, 189 Iowa 16, 19, 20, 176 N.W. 297, analyzes the three precedents just cited and reaffirms them. In the Reynolds case plaintiffs served defendant with the thirty-day notice required by what is now Code section 562.4, thereby indicating their lack of assent to defendant's occupancy, but did not commence action for more than thirty days.

We think Mr. Rohde's assumption the lease was terminated affords no stronger ground for holding defendant's possession, during the three months before this action was commenced, was not peaceable than did the notices or agreement of the termination of the lease in the cited cases.

The situation might well have been different if plaintiff's notice of termination of the tenancy on May 9 had fixed the time of such termination at a future date less than thirty days prior to commencement of the action rather than on May 9. The cause of action would not then have accrued until the date fixed. See Fillman v. Sherwood, 192 Iowa 1161, 184 N.W. 287.

Both sides cite Town of Lakota v. Gray, supra, 240 Iowa 193, 195, 196, 35 N.W.2d 841, 842, 843, and Rudolph v. Davis, 237 Iowa 1383, 1385-6, 25 N.W.2d 332, 334. Our holding is entirely consistent with these precedents. In the Lakota case defendant moved to dismiss the petition on the ground it showed on its face the action was barred by thirty days peaceable possession. We

pointed out the petition did not affirmatively show peaceable possession but in fact alleged an ejectment proceeding was brought during the thirty-day period and rightly held the motion to dismiss was not good.

In Rudolph v. Davis, supra, defendants also moved to dismiss the petition on the ground, among others, it affirmatively appeared therefrom defendants had peaceable possession for more than 30 (43) days before action was commenced. Defendants' occupancy was under a lease with a receiver appointed by the court in another action between the parties which was not terminated until four days before commencement of the forcible entry and detainer action. The Rudolph decision is thus summarized in Town of Lakota v. Gray, supra: "* * * retention by a tenant after termination of lease did not constitute 'peaceable possession' where both parties claimed the right of possession and were litigating their claims."

Without citing decisions from other jurisdictions to such effect, it appears to be well settled that possession is not peaceable where it is in litigation between the parties as in the Lakota and Rudolph cases, supra.

Notwithstanding notice to defendant that plaintiff declared the lease forfeited and Mr. Rohde's assumption the lease was terminated, plaintiff, for three months after its asserted cause of action accrued, did not disturb or contest defendant's possession but in fact tolerated it. The action must be held barred by Code section 648.18.—Affirmed.

All JUSTICES concur except SMITH, J., who takes no part.