W. H. McELWEE and ORAL MAE McELWEE, appellees, v. DOUGLAS DEVAULT and SUSAN DEVAULT, appellants.

No. 50889.

(Reported in 120 N.W.2d 451)

D. W. Countryman of Hadley & Countryman, of Nevada, for appellants.

Donald L. Nelson, of Nevada, and Pasley, Singer & Seiser, of Ames, for appellees.

Stuart, J.—On August 29, 1960, W. H. McElwee and Oral Mae McElwee entered into a written crop share farm lease as landlords with Douglas DeVault and Susan DeVault as tenants for a three-year period commencing March 1, 1961. It provided for usual crop shares plus $300 cash rent for pasture, buildings and lots and also contained the following provisions:

"I. The second party covenants to farm said premises in a good farmlike manner, and to raise the greatest amount of grain thereon, the nature of the soil and season will permit * * *.

"II. The second party covenants to care properly for all growing crops in good and husbandlike manner, and to harvest all crops in proper season, * * *.

"III. The second party shall haul out and distribute with a manure spreader upon the poorest soil upon said premises or as directed by the first party, all the manure and compost suitable to be used * * *.

"IV. The second party shall * * * keep said premises free from brush, burs and thistles, shall keep the pasture land free from weeds by seasonably mowing the same, shall on or before the 15th day of August of each year mow or cut near the surface all weeds on said land within the public roads thereon and along fence rows * * *.

"VIII. If the second party shall fail to cultivate said premises as herein agreed, or shall fail to keep any of the cov-

enants contained in this lease, * * * then this lease shall, at the election of the first party, be null and void, and the first party or his legal representatives shall have the right to take possession of the premises * * *."

The tenants took possession about March 1, 1961, and commenced farming operations. The landlord became dissatisfied with the manner in which the farm was being operated and on June 16, 1961, had his attorney write Mr. and Mrs. DeVault a letter in which he made known Mr. McElwee's dissatisfaction with the manner in which DeVault was operating the farm, warned him that he was violating provisions of the lease and stated notice of termination of the lease and demand for possession of the premises would be served upon him unless there was marked improvement in his performance as a tenant within a week.

On August 18, 1961, plaintiff served the following notice of termination of farm tenancy upon Mr. and Mrs. DeVault:

"To Douglas DeVault and Susan DeVault

"You and each of you are hereby notified that the farm tenancy of the following described real estate situated in Story County, Iowa, to-wit: The Northwest Quarter (NW¼) of Section Twenty-nine (29) in Township Eighty-two (82) North, Range Twenty-one (21) West of the 5th P. M. is terminated effective March 1, 1962. You are further notified that the reason for said termination is due to your failure to farm the premises in a workmanship manner, that you have failed to employ the methods that are generally considered sound from a standpoint of good agricultural practices. You are further notified that additional grounds for the termination are your failure to properly prepare the ground for said crops, your failure to properly plant the crops and properly cultivate and care for said crops will terminate and expire on the first day of March, 19—, and such tenancy will not continue after said date.

"This notice is given to you in accordance with the provisions of Chapter 562 of the Code of Iowa.

"You will therefore take notice and govern yourselves accordingly."

The words "will terminate and expire on the first day of March, 19—, and such tenancy will not continue after said date" are printed in the form. The portion immediately prior thereto is typewritten.

Tenants did not move from the farm and on March 9, 1962, landlord commenced a forcible entry and detainer action alleging several specific breaches of the covenants of the lease which will be hereinafter discussed. After hearing the evidence the trial court held that the tenants did a poor job of farming, violated the provisions of the written lease and ordered them to remove from the premises and to surrender possession to the landlord.

I. Tenants have appealed. They make seven assignments of error, six on matters of law and the seventh questions the court's finding that the provisions of the lease were violated. The trial was in equity and review is de novo in this court. Section 648.5, 1962 Code of Iowa; Roshek Realty Co. v. Roshek Bros. Co., 249 Iowa 349, 87 N.W.2d 8. As the last assigned error requires a detailed examination of the evidence we will consider it first. Hereinafter reference will be made to the landlord and tenant in the singular for the sake of convenience.

II. The landlord in his petition set out several specific actions which he claimed were breaches of the covenants contained in the lease and set out hereinabove. In substance he claims tenant was from two weeks to a month late in his entire farming operation during the crop year. The manure was not spread when and where it should have been spread. The ground was not properly prepared for seeding and was not properly cultivated. Tenant neglected cutting the weeds and burs and did not pull the corn out of the beans. Landlord claims the crop yield was below average of the surrounding farms this particular year. Landlord claims further that tenant worked off the farm when he should have been doing his farm work.

Many of these charges are denied by the tenant. Tenant introduced into evidence a report from Iowa State University on estimated crop yields of Iowa soils. The figures are long-term averages covering the period between 1940 and 1957 and are not particularly helpful in determining the comparative yield of this particular farm in this particular year. It does show how-

ever the yield from Wabash soil is less than that of other soils in the vicinity. Tenant's argument that landlord wanted to terminate the lease to sell the farm is not supported by the evidence. It was never listed for sale and the only inquiry mentioned in the record was in October long after the notice of termination was served.

Even if we give the tenant the benefit of the doubt on disputed matters, which is more than he is entitled to in view of the adverse decision of the municipal court, rule 344 (f)7, Rules of Civil Procedure, the following evidence remains undisputed.

1. The Wabash soil was planted at a time when it was very rough and cloddy and would not make a good seedbed. The tenant plowed this soil wet and let it dry for a week to ten days before discing. It should be plowed in the fall (not this tenant's fault) but, if plowed in the spring, the accepted practice is to disc immediately.

2. The manure was not hauled in the spring and not placed where the landlord directed.

3. Landlord cut weeds himself, hired burs cut and pulled the corn out of the beans.

4. Tenant was working off the farm in the fall when others were harvesting corn.

5. Tenant was off the farm some in March, April and May and other times during the year and earned a total of $2367.84 during the year.

This course of conduct while not a flagrant violation of the lease supports the landlord's charges that the tenant violated the provisions of the lease set out at the beginning of this opinion. While the landlord may have been more particular than most, he had conveyed his dissatisfaction to the tenant by conversations, actions and the letter of June 16. He was in the field cutting corn out of the beans in August during which time the notice of termination at the end of the crop year was served. None of these things seemed to have any influence upon tenant's method of operation. He did not heed the landlord's warnings.

The fact that a three-year lease is involved in this case has an important bearing upon our decision. Even though the conduct above may not have been such as would justify a landlord

in terminating the lease in the middle of a crop year and ousting the tenant with the hardships and difficulties resulting from such action, the tenant's operations were such that the landlord should not be required to put up with them for two more crop years. If we should hold that the landlord did not prove the tenant violated the terms of the lease under this evidence, we would in effect sanction the undisputed conduct set out above. It would be as inequitable to do this as it would be to oust the tenant in the middle of a crop year. The landlord gave notice of his dissatisfaction in June and served notice of termination of the lease in August effective at the end of the customary crop year. The landlord was fair to the tenant in the manner in which he terminated the lease. Under this record he was justified in doing so.

III. Tenant assigns as error the failure of the Municipal Court to transfer this cause to the District Court upon their motion. They contend the three-year lease with the plaintiff, landlord, put paramount title in issue and that the cause should have been transferred to the District Court under section 648.14, Code of Iowa, which has sole jurisdiction to investigate title. Section 648.13, Code of Iowa.

This action is concerned with the right of possession and not title. The tenant's right of possession is dependent upon landlord's title and not upon any superior title of his own and the tenant is estopped to deny the title of the landlord. Wright v. Zachgo, 222 Iowa 1368, 271 N.W. 512; Larson v. Baker, 235 Iowa 200, 204, 16 N.W.2d 262. Tenant relies upon the dissenting opinion in Larson v. Baker and general authorities not factually similar to the case at bar. Jensen v. Nolte, 233 Iowa 636, 10 N.W.2d 47, does not support tenant's position. The tenant fails to distinguish between an interest in land and title to land. The special concurring opinion in Larson v. Baker, supra, makes this distinction on page 207 of 235 Iowa:

"In the Nolte case, supra, we said a lease is a conveyance of a portion of the owner's interest. That is quite different from saying a portion of his title. Right of possession is, of course, an attribute of ownership or title, but it seems quite inaccurate to say that when he leases he divides his title and

sells a part of it. Title surely cannot be so 'divided.' Under our law a leasehold is personalty. The owner can divide his title by conveying an estate for life, which is a freehold estate, and a part of the title. But he cannot do so merely by creating a leasehold which is personal property. I think when our statute, section 10655, uses the words 'title to real estate' it means more than a mere temporary possessory interest."

We agree. Municipal Court did not err in refusing to transfer this action to the District Court.

IV. The second legal error urged by tenant was that his evidence and the scope of cross-examination of the plaintiff were restricted and limited in an equity action. Tenant sets out the instances of which he complains. We have reviewed them all and find no error. In most instances the evidence did come into the record. In others tenant was given an opportunity to make an offer of proof and declined to do so. In other instances attempts to show landlord's attitude or traits were immaterial. In none of the instances did the rulings of the court create reversible error.

V. Tenant claims the notice of termination served in August of 1961 was defective because it was not timely served, contained no specifications wherein tenant failed to comply with the terms of the lease and because it was not signed by Oral McElwee, wife of W. H. McElwee.

The notice hereinabove set out was served August 18, 1961, and informed the tenant that the lease was terminated as of March 1, 1962. The timeliness question is answered by the case of Wright v. Zachgo, 222 Iowa 1368, 1371, 271 N.W. 512, in which a similar notice was served during August terminating the lease the following March 1. On this specific question the court said: "A notice to quit must be given before the commencement of the action and the lapse of time did not affect the validity of the notice. The defendant cannot complain that he was given more than the statutory time in which to prepare to yield possession of the premises to the plaintiff." (Citations)

The notice informed tenant that the lease was being terminated for failure to farm the premises in a workmanlike manner and called particular attention to his failure to properly

prepare the ground, plant, cultivate and care for said crops. These specifications refer sufficiently to the terms of the lease to have informed the tenant of the landlord's complaints. Other breaches such as failure to cut weeds, pull corn from the beans, harvest the crops and haul manure to the proper field occurred after the notice was served. If tenant desired more specific information he could have obtained it from the landlord who was on the premises many times during the year and was in the field cutting corn out of the beans both before and after the notice was served.

It was not necessary for Mrs. McElwee to sign the notice of termination. She was not even a necessary party. Van Emmerik v. Vuille, 249 Iowa 911, 88 N.W.2d 47. Tenant attempts to distinguish the instant case from the above cited case because Mrs. McElwee wanted a three-year lease in the first place. This does not mean she could not change her mind because of the tenant's subsequent conduct. The fact she is a named plaintiff indicates she has changed her mind and renders this argument invalid.

VI. Tenant claims the action is barred by 30 days peaceable possession. He states "everything prior to July 18, 1961, is forgiven and barred by statute." In other words he claims that anything which occurred more than 30 days before the notice was served cannot be a basis for a violation of the lease. Tenant misconstrues both the law and the terms of the lease. The lease gives the landlord the right to elect to forfeit the lease for breach of the covenants. He did so August 18 declaring it forfeited as of March 1, 1962. The cause of action for forcible entry and detainer therefore did not accrue until March 1, 1962. The action was commenced nine days thereafter and tenant did not have 30 days peaceable possession. Roshek Realty Co. v. Roshek Bros. Co., 249 Iowa 349, 87 N.W.2d 8; Wright v. Zachgo, 222 Iowa 1368, 271 N.W. 512; Fillman v. Sherwood, 192 Iowa 1161, 184 N.W. 287. The tenant's position that the 30 days runs from each breach of the lease would create an impossible situation for both the landlord and the tenant. The landlord would not dare wait to see if tenant's actions would improve and tenant could never be given a second chance. This interpretation would be very unfair to both parties.

VII. Tenant argues that landlord waived all rights under the alleged cause of action by accepting the rental payment on November 15. Landlord by notice terminated the lease as of March 1, 1962. The rental payment made November 15 was for the crop year ending March 1, 1962, and landlord was entitled to receive this rent in any event. Had the rent covered a period beyond March 1, 1962, the defense of waiver would have had some merit. The tenant's argument on cash rent has no more validity than if he had claimed a waiver because landlord accepted his share of the crops grown on the premises during this crop year.

VIII. Tenant argues the court erred in overruling defendant's motion to dismiss the count alleging fraud in the obtaining of the lease as being inconsistent with and destructive of the counts claiming violation of the terms of the lease. Cases cited by tenant are prior to the Rules of Civil Procedure. Rule 22 says: "A single plaintiff may join in the same petition as many causes of action, legal or equitable, independent or alternative, as he may have against a single defendant." These are allegations of alternative causes of action and are quite proper under the rules.

We find no error in the proceedings in the lower court and the judgment of the lower court is therefore affirmed.—Affirmed.

LARSON, THOMPSON, SNELL and MOORE, JJ., concur.

PETERSON and THORNTON, JJ., dissent from Division II.

HAYS, J., not sitting.